CARPENTER and wife, appellants, and CARPENTER'S EXECUTORS, respondents.

1. Actual fraud is necessary to invalidate a voluntary conveyance made by one free from debt.

2. A wife's separate estate will not be charged with her husband's debt, merely because she stood by in silence, while her husband represented himself to be the owner of such estate, as an inducement to the creditor to give the credit, and by such representation deceived the creditor.

Appeal from a decree of the Court of Chancery. The opinion of the Chancellor is reported in 10 *C. E. Green* 194.

*Mr. Lewis Cochran*, for appellants.

*Mr. John W. Griggs*, for respondents.

The opinion of the court was delivered by

DIXON, J.

The bill in this cause was filed by George Carpenter, to set aside, as fraudulent and void against him, two deeds, by which John S. Carpenter conveyed a farm in Sussex county to his wife, Mary Ann. These deeds were delivered and recorded in November, A. D., 1866, and were voluntary. The complainant became a creditor of John S.; in March, A. D., 1869. At the time of the conveyance, John S. was not only solvent, but so far as the case shows, entirely free from debt, except upon his bond, which was secured by mortgage upon this farm.

It is well established that, to enable a subsequent creditor to impeach a conveyance made under these circumstances, it must be shown to have been *mala fide;* its fraudulent character must be proved as a fact. And if the evidence does not lead to the conviction that there was a present purpose to contract future indebtedness, the payment of which was to be evaded or hindered, or some other fraudulent design to the injury of creditors or purchasers, then the conveyance will stand.

" There is nothing inequitable or unjust in a man's making a voluntary conveyance or gift, either to a wife or child, or even to a stranger, if it is not at the time prejudicial to the rights of any other persons, nor in meditation of any future fraud or injury to other persons." *Story's Eq. Jur.*, § 356. The principle is recognized in *Lush* v. *Wilkinson*, 5 *Ves.* 384; *Reade* v. *Livingston*, 3 *Johns. Ch.* 481; *Sexton* v. *Wheaton*, 8 *Wheat.* 229; *Cook* v. *Johnson*, 1 *Beas.* 51; *Belford et al.* v. *Crane*, 1 *C. E. Green* 265; *Mellon* v. *Mulvey*, 8 *C. E. Green* 198; *Winchester* v. *Charter*, 102 *Mass.* 272.

The question in this cause is then, whether this fact of fraud is made out; fraud at the time of the conveyance? In the judgment of the Chancellor, it is. I am constrained to say, in my judgment it is not. While the law requires that one should be astute in ferreting out the evidences of fraud, yet the law will not presume actual fraud. The evidences, when produced, must satisfy the judgment that it exists. It is not necessary here to narrate all the circumstances which attended the transactions now under review; they are quite fully stated in the Chancellor's opinion. It suffices to say that, when considered, they leave my mind unsatisfied of fraud.

It is contended that, even if the conveyance before spoken of was valid, still the decree subjecting this farm to the complainant's debt may be sustained upon the ground that, as an inducement to the complainant to become a creditor of John, John represented himself at the time as being the owner of this farm, and his wife, Mary Ann, stood by silent, and permitted the complainant to act in the belief that this representation was true. The remark attributed to John is, that *his property at home* was worth double his indebtedness. Whether the wife heard this remark, admits of grave doubt. Whether she comprehended it as referring to the farm, is perhaps still more dubious. But if the strongest inferences of fact against her be drawn, they would not accomplish the end which the complainant seeks. Here was no actual pledge of the property to the payment of the debt about to be contracted; no benefit accrued to the wife's estate from the credit given; nothing

that she did, or omitted to do, added credibility to her husband's statement. If the complainant was, as he says, ignorant of the transfer to the wife, then her silence did not enter into the motives that induced his action. It was the husband whom he. believed, and he would have believed him equally had the wife been absent. She was in the presence, and, in contemplation of law, under the power of her husband. Under these circumstances, she subjected neither herself nor her estate to any liability, at law or in equity. It would be strange if, when the law has so carefully guarded the wife's land from the husband's control and influence, a court of equity should decree that it could be wrested from her because, under such influence and control, she merely had been silent when she might have spoken. Even under the enabling legislation of New York, a wife is not liable for the tort of her husband, in which she does not participate as an actor, and by which she is not profited, or her separate estate benefited. She is presumed to be *sub potestate viri.* *Vanneman* v. *Powers*, 56 *N. Y.* 39. The decree should be reversed.

For reversal—DEPUE, DIXON, DODD, GREEN, REED, SCUDDER. 6.

For affirmance—BEASLEY, C. J., CLEMENT, VAN SYCKEL, WOODHULL. 4.