Frenche v. Kitchen.

## James Frenche et al.

*v.*

## Seneca B. Kitchen et al.

A judgment creditor who delays twenty years after obtaining his judgment and after knowledge of the alleged fraud, filing his bill to set aside a conveyance made by the debtor to his wife, on the ground of fraud, is guilty of laches.

*Mr. Charles M. Woodruff*, for the complainants.

*Mr. George M. Shipman*, for the defendants.

BIRD, V. C.

The bill of complaint in this cause is filed in order to have a judgment at law declared to be a lien upon lands conveyed to the wife of the defendant Seneca B. Kitchen prior to the rendition of such judgment. The judgment is for $371.93 of principal and $32.52 of costs. It was obtained July 17th, 1872. The action for the recovery of this judgment was instituted October 18th, 1871. The deed of conveyance by which the title was passed to the wife Jane, was dated April 4th, 1872, and recorded the 9th of the same month. The bill in this case was filed April 29th, 1892, more than twenty years after the deed referred to was recorded.

It is alleged in the bill that the conveyance to Mrs. Kitchen was without consideration and void as to creditors.

There are two defences set up by Mrs. Kitchen—one that, although the title to the property in question was originally taken in the name of her husband, she paid the consideration therefor with her own money, and purchased and paid for all of the materials that entered into the construction of the improvements thereon; the other, that if the complainants ever had any rights as against her, they have lost or forfeited them by their laches.

While there is no little uncertainty as to the exact amount of money which Mrs. Kitchen contributed towards the purchase-

money for the lot in question, and towards the purchase of the materials used in the construction of the dwelling-house thereon, it cannot be doubted but that she did, out of moneys earned by her own labor and moneys received as portions of her father's estate, make large advances therefor. It is also equally clear that she has had the possession and control of the said premises ever since the erection of the dwelling-house thereon and has paid the taxes thereon.

The uncertainty as to the amount of money which Mrs. Kitchen contributed, arises from the lapse of time since she made such contribution. She was married in 1848, and at that time had saved of her own earnings about $300. This property was purchased, in 1857, for $518. At that time her father advanced to her $500, which, with her own, she paid the consideration for the title. Her husband transacted all the business, and it was understood that the title was to be taken in her name, but it was taken in his name. She also was entitled to other moneys from her father's estate. When she understood that the title was in her husband, she procured it to be transferred to herself. This lapse of time has given rise to the principal doctrine of laches as enunciated and supported in many decisions, especially when it results in such change of circumstances as to be prejudicial to the real interests of the defendant. When such is the case, courts of equity always justify defendants in invoking its aid. In this case the complainants knew of the transfer of this title from an actual inspection of the record, within a year after the entry of their judgment. Since then two important witnesses, as to the amount of money which Mrs. Kitchen actually received from her father's estate, have died. It is very evident also from her appearance upon the witness-stand, as well as from her statements, the transactions of twenty-five and thirty years ago have very greatly faded upon her memory or entirely disappeared. And this is more especially true as to her husband.

In *Brown* v. *Mutual Insurance Co., 5 Stew. Eq. 814*, Mr. Justice Scudder, in speaking of this principle, said: "These defendants have delayed making their defence until Israel H. Morehouse and Anthony Meeker, the principal witnesses, are

Frenche v. Kitchen.

dead, and the complainants are at a great disadvantage. This is a proper case to enforce the rule that, in suits to rescind contracts for fraud, it is the duty of the complainants to put forward their complaint at the earliest possible period." This principle, universally recognized, is illustrated in a great variety of cases. *Wilkinson* v. *Sherman, 18 Stew. Eq. 414; Van Houten* v. *Van Winkle, 1 Dick. Ch. Rep. 384; Lynch's Administrators* v. *Vanneman, 18 Atl. Rep. 468; S. C.* affirmed in court of errors and appeals, at the June Term, 1894; *Doughty* v. *Doughty, 2 Stock. 351; Hance* v. *Conover, 4 Stew. Eq. 505; McCartin* v. *Traphagen, 16 Stew. Eq. 324; Bump Fraud. Conv. 533; Harwood* v. *Railroad Co., 84 U. S. 81; The Key City, 81 U. S. 653; Richards* v. *MacKall, 124 U. S. 183.*

Counsel for the complainants insisted that, so long as the vitality of the mortgage was preserved, the complainants could institute any proceedings whatever for its enforcement, against any right or interest of the defendants therein. This proposition no one will dispute, but the question is not solely between the complainants and the defendant in the judgment at law. A third party has been introduced, who cannot be affected at all directly by the judgment at law. She now claims rights or interests which stand in the way of the execution of the complainants, issued upon their judgment at law. They find it necessary to bring this suit in equity in order to brush away her claim of right or interest. Hence, the inquiry is whether, as to her, it is fair and conscionable for the court, after the lapse of twenty years, to entertain this proceeding. Not only is the defendant in the judgment at law charged with fraud, but his wife, who was in no way connected, is also charged with complicity in the fraud. There is not only nothing set up in the bill of complaint showing why there has been so much delay in commencing this suit, but not the slightest effort was made in offering the testimony to satisfy the court that the complainants had used reasonable diligence. Had the complainants acted with that promptitude which I think is required by the spirit of the cases above cited, Mrs. Kitchen would have been able, beyond any reasonable doubt, to have established with very

great certainty the amount of money advanced by her, as well for the purchase of the title to the land in question as for the improvements put thereupon; and if, as now she insists, she did not make all such payments, what she did really make would have been preserved to her by way of lien, according to the well-settled practice of this court. *Roe* v. *Moore, 8 Stew. Eq. 526, 529; Demarest* v. *Terhune, 3 C. E. Gr. 532; Levi* v. *Welsh, 18 Stew. Eq. 867.*

It is no part of the duty of a court of equity to encourage parties in any fraudulent attempts against creditors, but claims of the character of those presented by Mrs. Kitchen will not be disregarded unless the testimony clearly establishes the charge that they were used for an unlawful purpose.

The fact that the conveyance to Mrs. Kitchen was made pending the suit is a badge of fraud, and is properly urged upon the consideration of the court in that light. Kitchen himself, when he was about to borrow the money, said that he owned the premises in question. This cannot be charged as evidence of fraud against Mrs. Kitchen unless it is also made to appear that she consented that her husband should hold the title in order that he might acquire a greater credit thereby. There is nothing in the case to show that Mrs. Kitchen did anything more than to take steps to secure the title to this property in her own name.

I will advise that the complainants' bill be dismissed, with costs.