# COURT OF ERRORS AND APPEALS

### OF THE

## STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY,
## AND THE PREROGATIVE COURT,

### NOVEMBER TERM, 1895.

---

JAMES SEVERS et al., appellants,

*v.*

TRUMAN M. DODSON et al., respondents.

1. A voluntary conveyance is not, *per se*, void except as against present debts.

2. An accommodation endorser of a promissory note that is not dishonored is not a present debtor.

3. *Quære*—Can the chancellor decree the sale of land that has been conveyed by way of gift in favor of a creditor at large?

---

On appeal from a decree advised by Vice-Chancellor Bird, whose opinion is reported in *Dodson v. Severs, 7 Dick. Ch. Rep. 311.*

*Mr. Garret D. W. Vroom* and *Mr. William M. Lanning,* for the appellants.

*Mr. John H. Backes,* for the respondents.

The opinion of the court was delivered by

BEASLEY, C. J.

This bill was filed by the respondents, as creditors at large, to set aside a conveyance made by their debtor to his grand-daughter.

The grounds taken before the vice-chancellor, on the part of such complainants, was that the transfer of the property was in pursuance of a scheme to defraud and delay creditors, or, failing in that contention, it was insisted that the conveyance was, at all events, without consideration, and was, therefore, constructively fraudulent as against existing debts, to which class it was alleged the claim sought to be enforced belonged.

By way of answering these grounds, the defendants contended that there was no fraud ; that the conveyance was not voluntary, and that if the transaction was a mere gift, nevertheless it was equitable and legal, inasmuch as it was not an arrangement hostile to creditors.

The vice-chancellor's consideration of the facts led him to the conclusions that the deed was voluntary and that there was no actual fraud in the affair, but that, as the debt in question was in existence at the time of the gift, such conveyance should be annulled in accordance with the rule established in the case of *Haston* v. *Castner, 4 Stew. Eq. 703.*

The result was a decree setting aside the conveyance and ordering the land to be sold, the proceeds to be applied to the payment of the debt due the complainants, the amount of which was ascertained by the court.

With respect to the facts that the conveyance was purely voluntary, and that it was not tainted with fraud, the opinion of this court is in all respects in accord with that of the vice-chancellor. This part of the case is deemed so plain as to render all

discussion of the subject utterly superfluous, but we think that the other essential fact, viz., that the complainants were creditors at the time of the transfer of the property, so far from being proved, was negatived by the evidence.

On this subject, the uncontested facts were these : The deed of gift was dated the 3d day of April, 1886, and at that time the donor, one James Taylor, was the accommodation endorser for one Davis, who was in debt to the complainants. From time to time these notes were renewed as they fell due, the old ones being regularly taken up and new ones substituted. None of this paper was dishonored before the making of the conveyance in question, the first of them being protested about a year after that event.

The inquiry therefore arises, whether this situation placed this case within the operation of the rule defined in *Haston* v. *Castner*, already cited. The doctrine propounded in that authority is this : that if a person be indebted to another at the time of a voluntary settlement made by him, such disposition is presumed to be fraudulent with respect to such debt, and no circumstances will suffice to repel the legal presumption of fraud.

This doctrine, after full consideration, was established by this court, and it is not intended, on this occasion, to modify it in any degree. It is true that the propriety of this principle has been much discussed and much doubted, both in England and in this country, and such investigation has exhibited great contrariety in judicial opinion, but, as the question is not deemed to be an open one in this state, it would be but to supererogate to review that line of authorities.

Accepting, then, as a datum, that the gift now in question is void as respects cotemporaneous creditors, the only interrogatory here apposite is, did the complainants belong to such class ?

This question, we think, must be answered in the negative. At the time in question they were not creditors of the donor. It is readily admitted that they were such in a sense that entitled them to the remedies provided in the act for the prevention of frauds and perjuries. They can, undoubtedly, set aside conveyances and transfers of property made to defeat their just

claims.  But at present we are not called upon to construe the
statute itself, our present function being to construe the rule of
evidence that this court has superinduced upon the statute.
This discrimination has not always been made, and the omission
has confused the subject. The act invalidates certain transfers
of property infected with fraud.  The rule now being considered
relates to the proof of such fraud, declaring that the cotempora-
neousness of the gift and the debt establishes it for certain pur-
poses and to a definite extent.

We have said the complainants' case does not fall within this
evidential rule, the reason being that they were not creditors of
the donor.  The latter was an accommodation endorser of cur-
rent notes, and the situation did not constitute him a debtor.
His assumptions might not have ripened into debts; whether
they would have that effect was altogether contingent.  It is
obvious that to bring this case within the principle in question
it is necessary to amplify, very greatly, its scope, for its terms
"existing debts" would have to be metamorphosed into "exist-
ing liabilities."  Such a change would be so fundamental as to
deprive the principle itself of all semblance of reason or expe-
diency.  When a man is in debt, especially if such debts be due,
it is certainly not irrational to infer, if he give away his prop-
erty, that the intention was to defeat such claims, but such de-
duction would seem to be most extravagant if, instead of a
present indebtedness, he has incurred a mere liability as a war-
rantor of title, as a tort-feasor, or as surety on an administrator's
bond.  If such responsibilities as these latter, which may, in
the long run, be transformed into debts, should have the effect
of invalidating voluntary settlements of property, then such
settlements would be the most uncertain of legal transactions.
It is plain that by force of so absurd a principle all donations
would, in a measure, be made contingent, and would many
times remain so beyond the lives of the donor and donee.

The result, therefore, is that in order to bring a case within
the operation of the rule in question, there must be a present
indebtedness, and not a mere probability of future indebtedness.

The question thus considered and disposed of has never here-

tofore been presented to the courts of this state for decision. There are, indeed, cases that approach it but do not embrace it. What are "existing debts" within the meaning of the statute of frauds has been several times *sub judice*, but what are existing debts within the rule of evidence above defined, has never before been adjudged. It will be observed that it has been already stated that, with respect to the statute, most present liabilities are under its protection against conveyances that are actually fraudulent, but that it is only debts, in the strictest terms, to which the judicial rule that, with respect to them, a voluntary transfer of property shall be void whether such transfers be fraudulent or not, is applicable. It is the former of these principles that has alone been illustrated in our decisions. Thus, in *Cook* v. *Johnson, 1 Beas. 52*, the plain case was presented of an endorser of a dishonored note being deemed a debtor after protest. *Phelps* v. *Morrison, 9 C. E. Gr. 196; Schmidt* v. *Opie, 6 Stew. Eq. 138; Post* v. *Siger, 2 Stew. Eq. 554*, are all cases in which fraud in fact existed, and were each decided on that basis. The judicial expressions used on these occasions are to be received as authority only to the extent that they regulate the class of facts to which they are applied. All that is decided is that a contingent liability, as that of an accommodation endorser, will lay a ground for a proceeding under the statute to set aside any transfer of property made in fraud of the holder of the claim. None of them decide that a contingent liability will, *per se*, raise an irrefutable inference of fraud so as to invalidate a conveyance made during the continuance of such a condition of affairs.

The case of *Dodson* v. *Taylor, 24 Vr. 200*, is not in any wise relevant to our present inquiry. The question then under advisement was, whether an accommodation endorser, before dishonor, was a debtor within the meaning of the statute for the relief of creditors against "heirs and devisees." The case presented was plainly within the statute. In the case of *New Jersey Insurance Co.* v. *Meeper, 8 Vr. 282*, it was declared that the act embraced within its policy even so uncertain a liability as inhered in a warranty of title to lands. It is true that in the

opinion read in *Dodson* v. *Taylor* the view is expressed that by the mere act of endorsement a person becomes a present debtor. It is said: " But, from the time of the endorsement, he is bound for the payment of the debt, and a person so circumstanced is in both common and legal parlance, a debtor."

It is not perceived how this doctrine is to be sustained. So far as is known, no person ever thought or styled himself, or was styled by others, a debtor by reason of his having become an accommodation endorser. If a merchant were called upon to make out a list of his debts, it is not believed that it would ever occur to him to put in such account the moneys called for in the paper that had been gratuitously endorsed by him, Under the law of this state, the debts of the citizen taxed can, to a certain extent, be deducted from his assessment, and certainly no one can doubt that if any person, for such a purpose, should include in his sworn statements the amounts secured by his accommodation endorsements, such taxpayer could be convicted of perjury. The hypothesis suggested would, in practice, be fraught with embarrassments. If, by the mere endorsement, the endorser becomes, *ipso facto*, a debtor of the holder of the note, then, by parity of reasoning, it follows that, from the same cause, the maker of the paper becomes the debtor of the endorser. And indeed it has, on several occasions in legal practice, been attempted to utilize this notion in the entry of judgment on bonds with warrants of attorney. Such was the cause essayed in the case of *Blackwell et al.* v. *Rankin, 3 Halst. Ch. 152,* the facts being that the plaintiff had taken judgment on an affidavit showing that he was the endorser on certain notes of the defendant, and which situation, it was insisted, showed a present debt. This contention is thus met by the chancellor. He says : " It is an abuse of language to say that, because I endorse your note to-day, payable three months hence, to be used by you, you are indebted to me to-day for the amount of it, and that it is a debt due and owing to me to-day." This doctrine is pointedly approved by this court in *Clapp* v. *Ely, 3 Dutch. 592.*

But it is to be remembered that, while the phraseology in

question is deemed to be open to this criticism, nevertheless, in the connection in which it was used, it probably embodies the legal rule that the relation which the holder and endorser of a promissory note bear to each other is that of potential debtor and creditor, which is all that is required by the statute giving relief to creditors against devisees or legatees. This construction was the result of a consideration of the lax language of the act as enlightened by its evident policy. It was a remedial measure, and was, therefore, to be liberally construed.

But the present case demands the application of a rule the most opposite of this. We are not now called upon to ascertain the meaning of statutory language in legislative policy, our entire province being to demarcate the rule of evidence promulgated by ourselves, that makes the existence of fraud in voluntary conveyances, under a certain condition, a mere inference of law, irrespective of the truth. The rule is one of the most rigorous character, having the operation of an estoppel, and is to be kept within the narrowest limits. It is, therefore, enough for this court to say that the contingent liability of an accommodation endorser, before dishonor, does not make him a debtor so that the holder of the paper can invalidate a voluntary conveyance made by him when there was no actual fraud in the transaction.

It is obvious that the case of the complainants, as exhibited in the proofs, will not stand the test of the foregoing exposition of the equitable rule in question; the decree, consequently, must be reversed and the bill dismissed.

Before leaving this case, it seems to me that there are certain matters which, although they appear to have escaped the attention of counsel, should not be passed in this court *sub silentio.* They are alluded to only for the purpose of " excluding the conclusion " that the present course of law has our sanction.

The general theory exemplified in the bill before us is, that a creditor, having neglected or refused to present his claim to the executor within the time limited by the court, can, at his will, proceed in equity and levy his debt out of any lands that his deceased debtor has honestly settled on any member of his

family, and this without regard to the condition of the assets of his debtor's estate. Plainly such a rule would be productive of the most flagrant injustice. In the present case, why should this gift to the granddaughter be defeated unless after the exhaustion of the other assets of the estate? The claim is of a right to pass by the primary assets and sequestrate this donation in their stead.

Again, the decree finds the estate of the donor is indebted to the complainants in the amount of several thousand dollars, and yet the personal representative of that estate is not a party to the suit.

Again, the complainants are creditors at large, and the bill is personal and not in behalf of themselves and other creditors similarly situated.

And lastly, the decree orders the land in question to be sold for the payment of the complainants' debts.

Does the chancellor possess the power to direct a sale of these premises? Whence is such power derived?

The decree for the debt must be construed to be against the executors of the donor, although they are not present, and such decree does not bind the lands of the deceased. Authority is conferred by statute upon the orphans court to order the lands of a decedent sold under certain circumstances, to settle the claims of creditors, but no such jurisdiction is given to the chancellor.

Under such circumstances as are here disclosed, it is entirely unsettled what course is to be taken by the creditors. The subject is both important and difficult; it has not been noticed either by the vice-chancellor nor by counsel, and as this court is not at present called upon to consider it, we leave it as we found it, undecided.

In order to avoid misconception of my own personal views on the subject above discussed, I deem it best to make the remark that in my opinion the inquiry is open to this further consideration, whether or not the rule that a voluntary transfer of property, unattended with fraud, is invalid with respect to existing debts, is applicable, unless such debts be past due at the time of the impeached transaction.

*For reversal*—The Chief-Justice, Garrison, Gummere, Lippincott, Magie, Van Syckel, Bogert, Brown, Sims—9.

*For affirmance*—None.