This is an action to set aside a conveyance of certain property in Orange made by Edward M. Raphel to his wife, Jane M. Raphel. *Page 496 
Mr. Raphel purchased it in July, 1918. In January, 1920, he deeded it to his wife. He was prior to and at the time of the making of the conveyance president, director, executive manager and the largest stockholder in an exporting corporation known as Edward M. Raphel Company. This company from time to time applied to the Equitable Trust Company of New York for financial accommodation.
At first loans were made on the straight notes of the company. Later, the personal endorsement of Mr. Raphel was required. The company's representative says that Mr. Raphel informed him that he had outside assets, among others the property in question. This was in October, 1919. On December 1st, 1919, a note for $25,000 was made by the Raphel company, and Mr. Raphel personally endorsed it. Various payments were made and renewals given until January 18th, 1921, when a note for $9,000 was given. This was not paid, and after various delays judgment was recovered on May 20th, 1926. The trust company states it had no knowledge of the transfer of the property until shortly before the commencement of this action, although the deed had been on record for over five years, and, of course, this fact could have been very readily ascertained.
In Severs v. Dodson, 53 N.J. Eq. 633, the court of errors and appeals held that an accommodation endorser prior to protest and notice is not a debtor, and that the holder of such an endorsed note is not a creditor within the meaning of the rule of evidence which makes a voluntary conveyance fraudulent and void in law as to existing creditors.
The court said (at p. 636):
"We have said the complainant's case does not fall within this evidential rule, the reason being that they were not creditors of the donor. The latter was an accommodation endorser of current notes, and the situation did not constitute him a debtor. His assumptions might not have ripened into debts; whether they would have that effect was altogether contingent."
And (at p. 639):
"It is therefore enough for this court to say that the contingent liability of an accommodation endorser, before dishonor, *Page 497 
does not make him a debtor so that the holder of the paper can invalidate a voluntary conveyance made by him when there was no actual fraud in the transaction."
Vice-Chancellor Stevens followed this case in City NationalBank of Elizabeth v. Foster, 91 N.J. Eq. 334, saying:
"The case comes within the rule laid down by the court of errors and appeals in Severs v. Dodson, supra; for the evidence fails to show actual fraud, and, according to the opinion in that case, we are not at liberty, in a case circumstanced like the present, to infer constructive fraud merely from the fact of a voluntary conveyance. The additional evidence taken after I had indicated my opinion orally does not change it. In fact, this evidence shows that the bank accepted defendant's re-endorsements after it had notice of the sale. If there is to be any modification of the rule in the case of a stockholder endorsing for a corporation, it must come from the court of errors and appeals and not from this court."
This case was affirmed by the court of errors and appeals.
Complainant says Severs v. Dodson was decided "long before the statute of 1919 was enacted," and argues that the statute has altered the judicial rule. But the National Bank Case, above cited, was decided and affirmed on March 1st, 1920, after the statute of 1919 was enacted, and reaffirms the doctrine of the earlier case in spite of the statute; and Vice-Chancellor Backes reaffirms the doctrine in Vail v. Diamond, 100 N.J. Eq. 393.
I think, therefore, that in order to succeed complainant must establish actual fraud. Has he done so? I think not. The conveyance was made in 1920. The note sued on was dated January 18th, 1921, and no action was brought thereon until 1926. The trust company could easily have ascertained whether Raphel actually owned the property, and it could have secured its indebtedness against that particular property.
A careful review of the testimony has convinced me that in 1919 and 1920, when these transactions occurred, Mr. Raphel and the Raphel company were solvent, although not as prosperous as formerly. In my opinion, the trust company *Page 498 
relied on Mr. Raphel's personal endorsement rather than on the ownership of a particular piece of property.
In Carpenter v. Carpenter, 27 N.J. Eq. 502, the court of errors and appeals said, in a case similar to the one at bar (atp. 503):
"But if the strongest inference of fact against her be drawn, they would not accomplish the end which the complainant seeks.Here was no actual pledge of the property to the payment of the debt about to be contracted; no benefit accrued to the wife's estate from the credit given; nothing that she did, or omitted to do, added credibility to her husband's statement."
In Kinsey v. Feller, 64 N.J. Eq. 367, the complainant contended that the husband, in the wife's presence, had claimed the property as his own, although he had transferred it. The court refused to set aside the conveyance, and said that mere silence on the part of the wife, while he represented himself as the owner to induce the creditor to give credit by such representation deceiving the creditor, would be no cause for charging her separate estate with the debt, and quoted the language of the Carpenter Case.
In Frenche v. Kitchen, 53 N.J. Eq. 37, Vice-Chancellor Bird (at p. 40) said:
"Kitchen himself, when he was about to borrow the money, said that he owned the premises in question. This cannot be charged as evidence of fraud against Mrs. Kitchen unless it is also made to appear that she consented that her husband should hold the title in order that he might acquire a greater credit thereby."
Vice-Chancellor Bird refused to set the aforesaid conveyance aside.
In Boquet v. Heyman, 50 N.J. Eq. 114, the defendant made a note payable in fourteen months, and more than six months before the date of making said note conveyed his property to his wife. The court held that the creditor seeking to set aside the conveyance was not an existing creditor at the time of the conveyance, and, therefore, in the absence of actual fraud, the conveyance could not be set aside. Vice-Chancellor Van Fleet says (at p. 116): *Page 499 
"* * * The case is destitute of all evidence tending to prove actual fraud. There is not enough to support even a moderately strong suspicion that the parties, in making the deeds, were instigated by a fraudulent motive. The deeds show on their face that they were voluntary; each purports to have been founded on a nominal consideration of one dollar; both were executed to change the title from the husband to the wife, and they were also bothplaced on record on the day of their execution. A person tendingto commit fraud by obtaining credit on the faith of property thathe does not own, does not usually make public the fact that he isnot its owner. To do so would, as is obvious, serve rather to defeat than aid him in the execution of his scheme. Where, therefore, a husband conveys property to his wife, and immediately after he has done so makes the fact public by placing the deeds on record, it should, as it seems to me, be held that his conduct furnishes evidence of rectitude of intention rather than of a purpose to commit a fraud. Actual fraud cannot be presumed, but must be proved."
Beckett v. Andorfer, 82 N.J. Eq. 125; affirmed, Ibid. 368,
where the court (at p. 126) said:
"The conveyance was promptly recorded, and any subsequent creditor could have easily ascertained the condition of the title before extending credit, and there is no evidence that Mrs. Andorfer even knowingly gave encouragement to anyone to believe that the property didn't belong to her; her occupancy of the property with her husband cannot be properly regarded as inconsistent with her ownership."
I think for these reasons the bill should be dismissed, and, therefore, it is unnecessary to discuss the question of laches raised by counsel.
 I will advise a decree accordingly. *Page 500