This is an appeal from a decree of the court of chancery.
The facts established at the hearing are that on May 20th, 1927, Samuel Garfinkel, one of the defendants-appellants, obtained a loan of $5,000 from the complainant-respondent, on the faith of a written statement in which he represented that he was the owner of ten shares of stock of the 105-107 Market Street Corporation, of the value of $37,500, and was the leaseholder of premises of the value of $20,000, and that with cash in bank, less $1,000 owed, he was worth about $56,950 net.
The note given for the loan was reduced by payments made on account and renewed from time to time, and on September 21st, 1928, the last renewal for $4,000 became due; it was not paid and suit was brought in the Essex county circuit court, resulting in a judgment on November 13th, 1928, against Garfinkel for $4,185.61, damages and costs.
The bill of complaint charged that on June 15th, 1928, Garfinkel assigned the ten shares of stock of the Market street corporation to the defendant, Murray Apfelbaum, Incorporated, for an alleged indebtedness of $11,000 and that the assignment was made for the purpose of defrauding complainant, and prayed that the defendant Murray Apfelbaum, Incorporated, be declared to hold the ten shares of stock as trustee for the benefit of complainant and other creditors, and *Page 22 
that complainant's judgment be impressed as a lien on said stock; that an account be taken of the alleged indebtedness of the defendant Garfinkel to the defendant Murray Apfelbaum, Incorporated, and that the court order the defendant Garfinkel to pay the amount of said judgment with interest, fees and costs, and to apply for that purpose any property or things in action belonging, due to, or held in trust for said Garfinkel, and that Garfinkel and Murray Apfelbaum, Incorporated, make discovery concerning the property of Garfinkel, or property held in trust for him.
The defendants denied there was any fraud and alleged that the assignment of the stock was for good consideration.
At the hearing before the vice-chancellor, Garfinkel and Murray Apfelbaum were called as witnesses for the complainant and testified that Garfinkel had been employed for a number of years by the Murray Apfelbaum, Incorporated (the latter operated a real estate business); that Garfinkel worked on a commission basis, and that he had received advances from time to time from the company, and at the time the stock was assigned (which was over a year after the original note of $5,000 was given) there was approximately $15,000 due from Garfinkel to the Murray Apfelbaum, Incorporated, and that Murray Apfelbaum, Incorporated, demanded some security under threat to shut off future advances, and that the stock was thereupon assigned for moneys Garfinkel then owed Murray Apfelbaum, Incorporated, and additional moneys to be advanced to Garfinkel while he was working for the company.
The question presented is whether under the testimony any fraud was committed by the connivance of Apfelbaum and Garfinkel, or, if, as the vice-chancellor found, the defendant Murray Apfelbaum, Incorporated, did not participate in any fraud, whether the consideration for the assignment was so grossly inadequate as to deprive Murray Apfelbaum, Incorporated, of its security for a debt, which, so far as the proofs go, was clearly shown to exist.
The vice-chancellor found as a fact that Murray Apfelbaum, Incorporated, was free of any fraudulent participation in the *Page 23 
transaction, remarking that he was imputing nothing against Mr. Apfelbaum and not criticizing him, saying: "Perhaps he did not realize the situation that he was getting into, but it is perfectly apparent to me that Garfinkel made every possible effort to defeat this bank."
The vice-chancellor then adjudged that the complainant was entitled to a lien on the stock prior to any right or interest of the Murray Apfelbaum, Incorporated.
In this we think he erred. The proofs were that at the time of the assignment of the stock, Garfinkel owed Murray Apfelbaum, Incorporated, upwards of $15,000, which would seem to be a fair consideration for the assignment of the stock, especially since the transaction was not an absolute sale but an assignment of the stock as security for moneys advanced and to be advanced.
The finding of fact below, therefore, was that Murray Apfelbaum, Incorporated, gave consideration for the assignment and the uncontradicted evidence was that Murray Apfelbaum, Incorporated, had no knowledge of any statement made by Garfinkel to the complainant at the time the $5,000 loan was made nor did it know that Garfinkel owed the complainant anything. Had Murray Apfelbaum, Incorporated, known of the loan by complainant to Garfinkel and then had taken this assignment withoutconsideration, it would, of course, have been guilty of fraud. Such, however, is not the case.
Counsel for complainant-respondent seems to think that if he succeeded in raising "some doubt as to the fair consideration of the transfer" the assignment should be set aside.
A doubt of a consideration is not sufficient to hold a person guilty of fraud. "Actual fraud," as the same learned vice-chancellor said in Conway v. Raphel et ux., 101 N.J. Eq. 495; affirmed, 102 N.J. Eq. 531; 141 Atl. Rep. 804, "cannot be presumed but must be proved."
The counsel for respondent in his brief asserts that the factual question in the court below was whether or not a consideration "fair or less than fair" had been given for the assignment and insists that there was not a fair consideration *Page 24 
within the meaning of the Uniform Fraudulent Conveyance act.
He then quotes from the act (P.L. 1919 ch. 213 p. 502; 1 Cum.Supp. Comp. Stat. p. 648 §§ 44, 147) to the effect that —
"Every conveyance made and every obligation incurred without fair consideration when the party making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors."
Respondent claims that the divestiture of the stock rendered Garfinkel insolvent and that the assignment frustrated the legitimate claim of respondent, which was a bona fide creditor under First National Bank of Belleville v. Merrick, 103 N.J. Eq. 63,
and that since respondent was a creditor and Garfinkel was insolvent and made every possible endeavor to defeat respondent (as the vice-chancellor found he did), then it was not necessary to find Murray Apfelbaum, Incorporated, guilty of fraud, to bring the case within the statute, and justify setting aside the assignment.
Section 4 of the Uniform Fraudulent Conveyance act provides that —
"Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."
This statute does not help respondent, because the burden of proof is on respondent, not only to show that there was not a fair consideration, but also that the transfer of this stock rendered the defendant Garfinkel insolvent within the intent and meaning of the act. Conway v. Raphel et ux, 102 N.J. Eq. 531.
Section 2 (1) of the act holds that —
"A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." *Page 25 
The proofs do not show Garfinkel was insolvent when he made the assignment, nor that by divesting himself of this stock he made it impossible to pay his other creditors — nor that the assignment was made without fair consideration within the meaning of the act, which provides in section 3 (b) that a fair consideration is given for property or obligation "when such property or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained."
Here again the act does not aid the respondent. The proofs show that the debt (more than $15,000) was not disproportionately small as compared with the value of the stock which, according to the testimony, was worth little more, if any than the amount of the indebtedness.
Under section 9 (1) and (A) of the act of 1919, page 502:
"Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair considerationwithout knowledge of the fraud at the time of the purchase, havethe conveyance set aside or obligation annulled to the extent necessary to satisfy his claim."
The proofs in the case sub judice bring the defendant Murray Apfelbaum, Incorporated, clearly within the above exception.
Assuming, therefore, that the Uniform Fraudulent Conveyance act is applicable to this case (as the respondent claims), it would appear that under the evidence taken in the court below there was no justification for the subordination of the right and interest of the defendant Murray Apfelbaum, Incorporated, in favor of the claim of the respondent.
But the respondent further insists that the vice-chancellor rendered his decision in accord with the "broad powers of equity," as well as with the act and that "reviewing the matter from the standpoint of pure equity, jurisdiction concerning fraudulent conveyances is exercised by courts of equity in this state upon the theory of inherent equity powers, irrespective *Page 26 
of the statute;" citing Horton v. Bamford, 79 N.J. Eq. 356;Gross v. Pennsylvania Mortgage and Loan Co., 101 N.J. Eq. 51.
We know of no "broad power of equity" which will permit a court to impose a trust in favor of a creditor on stock which has not been assigned to that creditor as against a person who, for a fair consideration, has taken a prior assignment.
The mere fact that Garfinkel stated to the respondent that he was the owner of this stock and would notify the respondent in writing of any materially unfavorable change in his financial condition and failed to do so, did not vest in the respondent any interest either legal or equitable in the stock.
Garfinkel held it free from any right of the respondent, and when he assigned it to the Murray Apfelbaum, Incorporated, the title to the stock vested in Murray Apfelbaum, Incorporated.
The Uniform Fraudulent Conveyance act provides in section 9 (2), P.L. 1919 p. 502, that "a purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may retain the property or obligation as security for repayment."
Under this provision of the statute, had the vice-chancellor found that Murray Apfelbaum, Incorporated, had given less than a fair consideration for the assignment, he could not have deprived Murray Apfelbaum, Incorporated, of its right to retain the stock as security for the moneys advanced by it to Garfinkel.
Had the vice-chancellor, as he might have done under the pleadings and proofs, advised a decree that Murray Apfelbaum, Incorporated, be held as a trustee for the value of the stock in excess of what was due it from Garfinkel and that Murray Apfelbaum, Incorporated, held the stock for its own benefit to the extent of its claim and thereafter for the benefit of the respondent, we would not be inclined to disturb such a decree.
There was, however, no finding by the vice-chancellor as to the amount due from Garfinkel to Murray Apfelbaum, Incorporated. *Page 27 
We find no justification, in the law or on the facts, for a decree adjudging that the respondent was entitled to a lien on the stock in question prior to the right or interest of the defendant Murray Apfelbaum, Incorporated.
The decree of the court of chancery must be reversed.
For affirmance — None.
For reversal — THE CHIEF-JUSTICE, TRENCHARD, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.