108 N.J. Super. 83 (1969)
260 A.2d 10
JESSIE C. LOMONACO, PLAINTIFF,
v.
MARY GOODWIN, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF JOSEPH LOMONACO, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Argued October 9, 1969.
Decided December 11, 1969.
*84 Mr. Dominick Giordano for plaintiff (Messrs. Giordano and Miller, attorneys).
*85 Mr. J. Bernard Saltzman for defendants.
MOUNTAIN, J.S.C.
Plaintiff is the widow of the late Joseph Lomonaco, who died November 6, 1967; defendant Mary Goodwin is his daughter by a former marriage. Plaintiff and her late husband, at the time widow and widower, were married in 1956. On January 20 of that year, just before their marriage, plaintiff and Joseph Lomonaco entered into an antenuptial agreement. Each relinquished all rights in the property of the other except that, should plaintiff be the survivor, she was to receive from her husband's estate the sum of $50 each month for a period of ten years. The payments were to terminate upon her earlier death or remarriage. They were conditional upon the parties being "married and * * * living together" at the time of Joseph's death. When Joseph died in 1967 he possessed no property except an automobile, having during his marriage made gifts of substantially all his other assets to his defendant daughter. Specifically, in December 1960 he transferred to her two savings accounts totalling $9,000, and in February 1961 he assigned over to her his stock interest in defendant Joseph Lomonaco Bakery & Grocery Co., a family business. She contends that these transfers were rightfully and voluntarily made and, furthermore, that at the time of his death Joseph and plaintiff were not living together.
The marriage was not entirely a happy one. Upon occasions Joseph left plaintiff and took up residence with his daughter. It was upon one of these extended sojourns in the winter of 1960-61 that he made the gifts to his daughter which plaintiff seeks to impugn. During this same period plaintiff initiated an action against her husband in the Juvenile and Domestic Relations Court claiming nonsupport, as she was apparently in need of funds. The suit was not, however, pressed. Admittedly, she besought her husband, almost daily, to return to her home. This he did in March 1961, and a period of relative tranquillity followed.
*86 On Sunday, November 5, 1967, Joseph appeared at his daughter's home in a distraught condition. He and his wife had quarreled. One witness to the event remembers Joseph saying that "he didn't think he was going back"; another recalls his saying that "he was definitely not going back." He walked to the nearby home of another relative and while there suddenly died.
I find that within the meaning of the agreement of 1956 the parties were still "living together" at the time of Joseph's death. As mentioned above, he had from time to time separated from his wife during the years of their marriage, always to return. Upon this occasion he had taken with him no clothing or other personal articles, nor had he sent for them. His comments and expostulations were inconclusive. The agreement itself was not drafted in a manner adequately to protect plaintiff, if it is to be literally interpreted as freeing Joseph's estate from this obligation should his death occur at a moment of what might otherwise have proven to be only a temporary estrangement, or in the event of separation not occasioned by the fault of plaintiff. It is not necessary, however, to consider further the imperfections or inequalities latent in the agreement. Interpreting it on its face, the prescribed condition of continuing cohabitation has been met.
What of the gifts to defendant that very nearly pauperized plaintiff's late husband? It seems clear that as a result of these transfers Joseph Lomonaco was left with insufficient assets to permit his estate to meet the obligation to plaintiff embodied in the antenuptial agreement.
Under the Uniform Fraudulent Conveyance Law, N.J.S.A. 25:2-7 et seq., a creditor "is a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent"; a debt "includes any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." N.J.S.A. 25:2-7. Following her marriage and at the time of the transfers to defendant, plaintiff had the status of a creditor and her contingent rights under the antenuptial agreement *87 constituted a debt within the broad scope of these definitions. The earlier doctrine in New Jersey that a contingent creditor is not a creditor within the protection of the law of fraudulent conveyances, a rule typified by the once leading case of Severs v. Dodson, 53 N.J. Eq. 633 (E. & A. 1895) was changed by the uniform act. Conway v. Raphel, 102 N.J. Eq. 531 (E. & A. 1928); McLaughlin, "Application of the Uniform Fraudulent Conveyance Act," 46 Harv. L. Rev. 404, 408 (1933). The transfers were admittedly gifts without any consideration passing to the donor. The statute adopts a modification of the so-called "equity" definition of insolvency:
A person is insolvent when the present fair saleable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured. [N.J.S.A. 25:2-8].
From the evidence I conclude that the transfers made by decedent to his daughter in the winter of 1960-61 rendered him insolvent within the meaning of the act. Such a transfer, or related series of transfers, is fraudulent.
"Every conveyance made * * * by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made * * * without a fair consideration." [N.J.S.A. 25:2-10].
Plaintiff's right to relief having been established, she is entitled to have the transfers set aside to the extent necessary to satisfy her claim. N.J.S.A. 25:2-15. The former rule, that a creditor had no standing to set aside a fraudulent conveyance unless possessed of a judgment or lien, Gross v. Pennsylvania Mortgage & Loan Co., 104 N.J. Eq. 439 (E. & A. 1929); F.W. Horstmann Co. v. Rothfuss, 128 N.J. Eq. 168 (E. & A. 1940) ceased to be the law upon our adoption of the present Constitution in 1947. Deerhurst Estates v. Meadow, 70 N.J. Super. 404 (App. Div. 1961).