Frank E. Potter et al., Appellants, *v.* Reynolds Car-
penter et al., Respondents.

Where it appeared, and was found, that the parties were in the habit of
rendering mutual services to each other without any agreement as to
payment, and that although, during the time, they had pecuniary trans-
actions to a considerable amount, their services were not brought, or
intended to be brought, into their accounts, a promise to pay cannot be
implied, and the services will be regarded as matters of mutual accom-
modation, for which neither party intended to make any charge against
the other; and this, although it is found that they did not suppose one
service was equal to, or was to be set-off against the other.

(Argued January 16, 1879; decided January 28, 1879.)

Appeal from judgment of the General Term of the
Supreme-Court, in the third judicial department, affirming a
judgment in favor of plaintiffs, entered upon the report of a
referee.

The case upon a former appeal is reported in 71 N. Y., 74.

The nature of the action and the facts are set forth suffi-
ciently in the opinion.

*E. F. Bullard*, for appellants. The referee erred in find-
ing that there was no understanding between the parties
that the services should off-set each other. (*Young* v. *Hunt*,
6 W. Dig., 180.)

*E. L. Fursman*, for respondents. The performance of
valuable services by one party for and at the request of
another raises an implied promise to pay for them. (*Mar-
ston* v. *Swett*, 66 N. Y., 206; *Livingston* v. *Ackerston*,
5 Cow., 531; *Griffen* v. *Potter*, 14 Wend., 209; *Maltby* v.
*Harwood*, 12 Barb., 473.)

Rapallo, J. The plaintiffs in their complaint claim to
recover upon a note made by the defendants for $1,116.44,
dated April 6, 1874, given in part payment for a stock of

goods sold by the plaintiffs to the defendants, and also for various items of services rendered from time to time in the years 1869, 1871, 1872 and 1874, amounting in the aggregate to upwards of $2,000. The defendants in their answer denied the allegations as to the services, and set up as counter-claims an alleged indebtedness of the plaintiffs of $200 for the use of a barn for four years, and of $1,000 for services in teaming for the plaintiffs from 1869 to 1874 at $200 per year, with other counter-claims. The plaintiffs replied that the use of the barn was not worth over ten dollars a year, that by mutual understanding the plaintiffs let the defendants use their horse and wagon as an equivalent therefor and for the other services claimed in the answer.

The referee found for the plaintiffs for the amount due on the note, and also found that the plaintiffs rendered all the services alleged in the complaint, but disallowed their claims therefor, finding, as to each item, that they were rendered under some agreement that no compensation was to be made therefor except board, influence in getting situations for the plaintiffs, rent of a store and the like. But in respect to the claims for use of the barn and services in teaming set up in the answer, the referee allowed the full amount claimed by the defendants, and he reported a balance in defendants' favor over and above the amount due on the note of $700 $\frac{96}{100}$.

There was no proof of any express agreement on the part of the plaintiffs to pay for the services of defendants in teaming, or for the use of the barn, nor was there any proof of the items of the charge for teaming, farther than that it was done by the teams and men employed by the factory of which the defendants had charge and was of almost daily occurrence, and its value was estimated at $200 per year. The testimony on these points is quite loose and general and from the findings of the referee as finally settled after an appeal to this court, it appears that the defendants frequently used in their business a horse and wagon belonging to the plaintiffs and that neither party kept any account of the services of the horse and wagon or of the team work.

The referee further finds that it was not their intention to keep any such account, but he also finds that the parties did not suppose that one service was equal to the other, and that there was no understanding between them that one service should be set-off against the other.

The referee also found that on the 1st of April, 1874, the defendants were indebted to the plaintiffs upon an open account for goods sold to the amount of $3,283.19 and afterwards paid the same to the plaintiffs, by installments as follows:

| 1874 | | |
|---|---|---:|
| May 7 | - - - - - - - | $1,123.13 |
| " | - - - - - - - - | 140.58 |
| June 13 | - - - - - - - | - 1,210.22 |
| Sept. 11 | - - - - - | 814.26 |
| | | $3,288.19 |

These payments were all made after the alleged indebtedness of the plaintiffs to defendants for $1,000 for teaming had accrued and there is no finding or proof that any such claim was ever set up until this action was brought.

Upon all these facts, and in the absence of proof of any express agreement to pay for the teaming, we do not think that such an agreement could properly be implied. The finding that neither party kept or intended to keep any account of it, is equivalent to a finding that it was not their intention that any charge should be made. The findings show that during all the period covered by these transactions, these parties were in the habit of rendering mutual services to each other, and that although they had pecuniary transactions to a considerable amount, these services were not brought, nor intended to be brought, into their accounts. Upon such a state of facts a promise to pay cannot be implied and these services must be regarded as matters of mutual accommodation for which neither party intended to make any charge against the other. This is not

inconsistent with the finding of the referee that the parties did not suppose that one service was equal to the other, or was to be set-off against the other. If neither party intended to keep any account of them there could be no comparison of values, or setting-off of one against the other, for there was nothing to set-off.

The judgment entered upon the report of the referee and the judgment of the General Term should be reversed and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed.