SETH B. ROBINSON, APPELLANT, v. LINCOLN TRUST COMPANY OF NEW JERSEY ET AL., RESPONDENTS.

Argued November 23, 1920—Decided February 28, 1921.

1. The right of an agent to recover compensation for his services rests upon contract, express or implied, as affected by custom or usage. Accordingly, creditor banks are not liable for compensation for the services of the members of their committee appointed to conserve a bankrupt's assets, in the absence of any express or implied contract to pay it, or of a custom or usage entitling the committee to compensation.

2. Where service is rendered by one person for another at the latter's request and under circumstances which negative the idea that it is gratuitous, the law implies a promise to pay a reasonable compensation therefor; but where the service is rendered with the understanding that it is gratuitous, the law does not raise an implied promise to pay therefor, no matter how valuable the service may be.

3. Several creditor banks, having an interest in a bankrupt's assets, and acting for their common benefit, may accept the services of an employe of one of them as a member of their creditor's committee, without incurring any liability to pay for such services, when they know, or are justified in believing from the outset, that the services are rendered because of an employment by his bank to represent its interest at the creditors' meeting, and but for such knowledge would not have accepted such services.

4. In a suit against several banks by a member of their committee appointed to represent their interests in a bankrupt's assets, if neither party contemplated that compensation was to be made to the committee for services, the plaintiff can recover none.

5. If, at the time when the plaintiff, an employe of one of several banks, was appointed a member of their committee to conserve a bankrupt's assets, it was not contemplated by either party that the committeemen should receive compensation for their services, and nothing arose by which the relations between the parties were changed, and the creditor banks were not informed of any intent to charge for such services until after they were rendered, the plaintiff is not entitled to recover on a *quantum meruit.*

6. Where officers of banks are acting respectively as members of a creditors' committee of several banks, including their own, knowledge acquired by them from a statement made to them, during the progress of the business, by one of their fellow-committeemen that he expected compensation for his services from the creditor banks jointly, was knowledge acquired in relation to a matter in which their personal interests were in conflict with that of their principals, and is not imputable to their principals.

---

On appeal from the Supreme Court.

For the appellant, *Henry Crofut White* and *Robert H. McCarter.*

For the respondents, *Edwin F. Smith, Charles L. Carrick, Clement K. Corbin* and *Philip Goodell.*

The opinion of the court was delivered by

TRENCHARD, J.  The defendants below are several banks, creditors of the Charles R. Partridge Lumber Company.  The

plaintiff is one of such creditors' committee of four. By this action he seeks compensation for services rendered as a member of the committee. The trial at the Hudson Circuit resulted in a nonsuit, and the plaintiff appeals from the judgment entered thereon.

We are of the opinion that the nonsuit was right.

The salient facts are these:

About 1912, the Charles R. Partridge Lumber Company, a corporation, was declared bankrupt and a trustee was appointed. Among the creditors were the defendant banks. The South Georgia Lumber Company, a corporation, also was a large creditor. The stock of that company was owned largely by Maynard A. Cheney. He proposed to the defendants that they, the creditor banks, should finance the purchase of the assets of the bankrupt lumber company from the trustee; that he, Cheney, should form a new corporation, in which the banks should be interested, to take the assets so purchased, and sell the same, and out of the proceeds pay the claims of the banks, rendering the surplus, if any, to the South Georgia Lumber Company. A meeting of the creditor banks was held, at which all of the defendants were represented, and resulted in the appointment of a committee of the banks to co-operate with Cheney in carrying forward such plan. The defendant banks then employed counsel (Edwards & Smith) to take care of the legal matters, and an agreement embodying the details of the plan as outlined to the banks was subsequently entered into, the banks, the committee, the South Georgia Lumber Company and Cheney being parties thereto. In pursuance thereof the banks purchased the assets from the trustee, and the new corporation was formed and purchased the assets from the banks, giving promissory notes in payment thereof. The business proceeded, but did not result as favorably as was anticipated; the South Georgia Lumber Company went into bankruptcy and all the banks were at considerable loss.

It further appeared that the committee of four, for services upon which the plaintiff claims compensation, was made up as follows: The plaintiff, who was counsel of one of the New

York banks, and the others being each an executive officer of some one of three other creditor banks, and all four being the chosen delegates of the banks, with which they were respectively connected, at the meeting of the creditor banks.

Of this committee the plaintiff alone claimed compensation, and he made no claim until shortly before he brought this suit, in 1919, for services rendered from June, 1912, to January 1st, 1915.

Now, the right of an agent to recover compensation for his services rests upon contract, express or implied, as affected by custom or usage. Accordingly, the creditor banks were not liable for compensation for the services of the members of this committee, in the absence of any express or implied contract to pay it, or of a custom or usage entitling the committee to compensation.

It was conceded at the trial that there was no express agreement by the defendants to pay the plaintiff or any member of the creditor's committee for the services rendered. The agreement under which they acted constituted them "a committee in behalf of the banks [defendants] to assist said Cheney and said lumber company in carrying out their said proposal and to do such other acts and things in and about the premises as will protect the interests of the banks," and contained no reference to compensation.

At the trial there was no evidence of any custom or usage entitling the committee to compensation, but the plaintiff contends that from the circumstances there arose an implied contract on the part of all the defendant banks to pay the plaintiff the reasonable value of his services.

Upon a careful consideration of all the evidence we think that contention without merit. Of course, the rule is that where service is rendered by one person for another at the latter's request, and under circumstances which negative the idea that it is gratuitous, the law implies a promise to pay reasonable compensation therefor. But where, as here, the service is rendered with the understanding that it is gratuitous, the law does not raise an implied promise to pay therefor, no matter how valuable the service may be. *Conk-*

*lin* v. *Kruger,* 79 *N. J. L.* 326; *Colloty* v. *Schuman,* 76 *Id.* 502; *Davison* v. *Davison,* 13 *N. J. Eq.* 246.

We think that the circumstances demonstrate that the committee's services were understood to be gratuitous.

The plaintiff had been employed by one of the creditor banks for the purpose of protecting its interest at the creditors' meeting, and the representatives of the banks gathered there had a right to suppose, and no doubt did suppose, that the plaintiff was interested on behalf of his client just as they were interested on behalf of their principals in realizing on assets so that all might share and have their claims paid so far as the assets would go to pay them; and, therefore, when they asked the plaintiff to act, in conjunction with three others, they did a thing which was in furtherance of the very purpose of his original employment by his bank. And, we think, these several creditor banks, having an interest in the same subject-matter and acting for the common benefit, might accept the services of an employe of one of them as a member of their creditor's committee, without incurring any liability to pay for such services, when, as here, they knew, or were justified in believing, from the outset, that the services were to be rendered because of an employment by his bank to represent its interest at the creditors' meeting, and but for such knowledge would not have accepted such services.

Of course, it is also true that if neither party contemplated that compensation was to be made to the committee, the plaintiff can recover none. If, therefore, at the time he accepted the place upon the committee it was not contemplated by either party that the committeemen should receive compensation for their services, and nothing arose by which the relations between the parties were changed, and the creditor banks were not informed of any intent to charge for such services until after they were rendered, the plaintiff is not entitled to recover on a *quantum meruit.*

Not only do the circumstances show that the services were understood by all parties at the outset to be gratuitous, but we think that they also show that there was no change in the relations of the parties, and that the defendants had no no-

tice of any change of intention upon the part of the plaintiff. It seems clear that these creditor banks did not intend or expect to pay for the services of this committee; and it is equally clear that the plaintiff knew, or reasonably ought to have known, that there was no expectation or intention of paying. Their written authority to act, which plaintiff helped to prepare, made no mention of compensation. No suggestion that they should be paid was made to the creditor banks. The plaintiff knew that each of the other members of the committee was a director and executive officer of some one of the creditor banks, and, of course, would not be entitled to special compensation for such services on the committee rendered in the line of their duties as officers, unless it was expressly provided for (which it was not) or the circumstances were otherwise such as to raise an implied contract to pay, which we shall presently show is not the case. And it is significant in this connection that they made no claim for compensation as such.

We think there was no other circumstance which would reasonably lead the defendant banks to believe that the plaintiff expected them to compensate him. The fact that during the progress of the business Mr. Cheney agreed with the committee to pay a certain sum of money "towards the *expenses* of the committee," is a long way from an acknowledgment of the banks of an obligation to pay *compensation* to the committee for *services*. The fact that shortly before the work was finished the plaintiff made statements to his fellow-committeemen, who were respectively officers of some (not all) of the defendant banks, indicating that he then expected to be compensated by the banks generally, does not help the plaintiff. The evidence shows that no claim for compensation was made by the plaintiff to the banks direct, or to any of them, or to any creditors' meeting, although there were many meetings of the representatives of the creditor banks which the plaintiff attended, after he had expressed his expectation to his fellow-committeemen. Nor is there any evidence that the plaintiff's statements to his fellow-committeemen that he expected compensation was ever communicated to the banks, or to any

creditors' meeting. Of course, as we have seen, the authority of the committee was limited to such acts as would protect the interests of the banks represented at the first meeting of creditors, and it is manifest that the committee had no authority to make a contract for compensation to themselves. It is also obvious that this committee represented the whole body of creditors who participated. The individual members of the committee were not sitting in the committee exclusively as representatives respectively of the several banks of which they were officers. In dealing with the question of their compensation—in so far as they could be said by silence or acquiescence to deal at all—they were dealing with a matter in which their individual interests were in antagonism to the interests of the defendant banks. Whatever share of the bankrupt assets went to compensate the committee for services depleted the dividend to be paid to the banks. It seems clear that where, as here, officers of the banks were acting respectively as members of the creditors' committee of several banks, including their own, knowledge acquired by them from a statement made to them during the progress of the work, by one of their fellow-committeemen, that he expected compensation for his services from the creditor banks jointly, was knowledge acquired in relation to a matter in which their personal interests were in conflict with that of their principals, and is not imputable to their principals. *Graham v. Orange National Bank,* 59 *N. J. L.* 225; *First National Bank v. Christopher,* 40 *Id.* 435; *Barnes v. Trenton Gaslight Co.,* 27 *N. J. Eq.* 33.

An examination of the remaining evidence discloses that there is none showing that the defendants ever knew, or reasonably ought to have known, that the plaintiff entertained the expectation of reward from the creditors generally, and did not look for compensation to his client as the other members of the committee thought he should. The banks had no more reason to suppose that the plaintiff sought compensation for services rendered upon the committee than they had reason to suppose that the other members of the commit-

tee expected compensation, and that, as we have shown, they had no reason to suppose. The banks were proceeding upon the reasonable belief that the interest of each creditor in conserving the debtor's resources was a sufficient incentive to induce service upon a creditors' committee, and in the circumstances there was no implication that such a committee performed their functions with a reasonable expectation of reward other than the general benefit in which all shared from the successful administration of the debtor's assets. Since no such implication arose from the circumstances, and since the evidence failed to show any notice to the defendants that the plaintiff performed his services under an expectation of special compensation, the nonsuit was right.

The judgment below will be affirmed, with costs.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, BLACK, KATZENBACH, WHITE, WILLIAMS, GARDNER, JJ. 9.

*For reversal* — PARKER, BERGEN, TAYLOR, ACKERSON, JJ. 4.