EQUITABLE LIFE INSURANCE COMPANY of Iowa, Appellant, v. VARICK C. CROSLEY et al., Appellees.

No. 43020.

FEBRUARY 13, 1936.

REHEARING DENIED OCTOBER 2, 1936.

Henry & Henry and Carl M. Adams, and Burnstedt & Hemingway, for appellant.

D. M. Kelleher, and Martin & Alexander, for appellee Varick C. Crosley.

ALBERT, J.—The cross-petition consisted of three claims against the plaintiff: First, a claim of $58,187.38 for alleged services performed by the investment company for the plaintiff; second, a claim for damages on account of certain loans made by the plaintiff, on which Crosley claims the investment company was entitled to commission; and, third, a claim for rent for office space occupied by an agent of the plaintiff. The lower court denied the defendants anything on this item, and the defendants did not appeal; so this item passes out of the case.

As to the claim made for services in the cross-petition, the plaintiff admits that certain services were performed; but alleges that the same were voluntary and without any expectation of compensation therefor on the part of the Crosley Investment Company, and without any intention to charge the plaintiff therefor, and that the plaintiff did not know and had no reasonable grounds to believe that the Crosley Investment Company expected compensation or payment therefor, and that the plaintiff never expected or intended to pay therefor, and that the claim, therefore, is barred, and the cross-petitioner is estopped from asserting said claim.

As to the claim for damages, the substance of the answer of the plaintiff is a general denial.

The three mortgages which were being foreclosed in the main action were made by Crosley on three different pieces of land, and the plaintiff was the mortgagee therein. The amount due thereon is not contested, and the right to foreclose is contested only to the extent that the amount due under the cross-petition should be offset as against the amount due on the mortgages. Whatever claim the Crosley Investment Company had against the plaintiff was duly assigned to Crosley as an individual.

The defendant Crosley was engaged in handling farm loans, in Webster county and other counties, and dealing with the plaintiff in relation thereto. This relation commenced about the year 1900 and continued until the year 1919, when the Crosley Investment Company was organized, and Crosley sold his loan and abstract business to the company thus organized. The corporation received and transacted the business previously conducted by Crosley, as an individual, on the same basis. The investment company made some of its loans on its own paper and sold the notes to various customers, among which was the plain-

tiff. In other cases, the investment company took applications from those desiring loans, forwarded them to the plaintiff, and when such loans were accepted and completed, mortgages and notes were made directly to the plaintiff. In these cases the investment company received its compensation directly from the borrowers. Plaintiff had, through the years from 1919 on, from $5,000,000 to $8,000,000 in loans made through Crosley and the Crosley Investment Company. There was no written contract or agreement between the plaintiff and the investment company.

At least during the depression, the question of "servicing" the loans became quite burdensome. This term "servicing of loans" consists in sending out notices to the borrower when interest payments become due, keeping after him for payment if interest becomes delinquent, attending tax sales (if taxes are not paid by the borrower), buying in at tax sales for the lender, and seeing that fire and tornado insurance is kept in force. This work was done by Crosley and Whitney, officers of the investment company. The details of these matters will be more fully referred to later. It is for these services on the part of the investment company that the defendant Crosley bases the first count of his cross-petition, in which he sues to recover on the theory of quantum meruit for services rendered.

Under the cross-petitioner's plea, there is no claim that there was any written or oral agreement between the plaintiff and the defendants to compensate the investment company for the servicing of loans.

As to the claim for services, it is necessary first to settle the law governing this matter.

The defendant in argument states that there was no contract which fixed the relationship between the cross-petitioner and the plaintiff. If the defendant is entitled to recover herein he must recover on the theory of an implied contract.

The claim of the defendant herein as pleaded is based upon the theory of a contract implied in fact, and that seems to be the theory on which this trial was conducted. Or, to state it in another way, defendant's cross-bill is a suit in quantum meruit, based upon the facts pleaded by the defendant which he claims authorize a recovery.

Of course, the general rule, as pronounced in many cases in this state, is that where one person performs services for another, which are known to and accepted by such person, an im-

plied contract arises to pay therefor. Like all general rules, to this rule there are certain exceptions. One of these exceptions is that, where the services performed are as much for the interest of the party performing them as for the interest of the party for whom they are performed, and at the time the party performing them has no expectation that he will charge for the same, a claim asserted thereafter for such services is merely an after-thought and will be disallowed, Jones v. Clark, 28 Iowa 593, loc. cit. 595. This case is used by the District Court of Appeal of California as a basis for the case of Spadoni v. Giacomazzi, 27 Cal. App. 149, 149 P. 51.

As applied to the situation in this case, the defendant Crosley made a prima facie case on paper and by his evidence, but was met with the contention that the services were voluntary or gratuitous, and, as applied to the facts in the case, the plaintiff went forward with its testimony and the real question for determination is whether or not it sustained this contention that the services were voluntary and gratuitous. There is no dispute whatever but that services were performed, and neither is there any contention over what the services were worth. The whole case, as we view it, turns upon whether the services of the defendant were voluntary.

One rule that will be of use to us in determining this question is that, where services are rendered and there is no special promise to pay for the same, and the party claiming for the services kept or intended to keep no account of the work, it is equivalent to saying that he had no intention that any charge should be made therefor, and such service must be regarded as a matter of mutual accommodation for which neither party intended that any charge should be made. Potter v. Carpenter, 76 N. Y. 157.

In Wright v. Sheldon, 24 R. I. 336, 53 A. 59, where the cashier of a bank had for many years collected dividends from stock and interest coupons on bonds for a large stockholder and depositor in the bank, during which time nothing was ever paid for such services and nothing ever said about payment by either party, it was said that "the natural presumption is that the service was rendered as a friendly act, and it is too late to bring in a charge for such service after it has ended."

In Robinson v. Lincoln Trust Co., 95 N. J. Law, 445, 112 A. 733, the court held that, where no books were kept and no charges made and nothing ever said to the defendant about com-

pensation, it conclusively shows that these parties were in the habit of mutually receiving and rendering favors with no present thought of making pecuniary compensation therefor; so that no recovery could be had, notwithstanding that the services might have been rendered at the request of the defendant, inasmuch as they were at the time when they were rendered intended to be gratuitous.

With these principles of law settled, we now turn to the record in the case. It is apparent that the fact end of the situation cannot be set out as fully as is shown by the abstract and amendment thereto. We will content ourselves with summarizing the same.

The Crosley Investment Company, with its place of business at Webster City, was organized in 1919. It conducted a loan, abstract, and insurance business, and had a fully equipped force to take care of the same. It was a loan correspondent not only for the plaintiff, but also for several banks, insurance, and loan companies. About half of its loan business was conducted through the plaintiff, either by taking applications to the plaintiff for loans and completing the same, in which instance it received compensation for its services from the borrower, or, in some instances, loans were taken in the name of the Crosley Company and were later sold and assigned to the plaintiff. As is usual in an extensive business of this kind, there was voluminous correspondence between the parties, a large part of which was introduced in evidence. On June 1, 1932, the plaintiff established an office of its own in Webster City, and the relations between the parties were then terminated.

At the time this relation was established between the plaintiff and the Crosley Company, plaintiff's testimony shows that this question of servicing loans was discussed and the Crosley Company requested the right to service the loans of the plaintiff which it handled. While the defendant Crosley does not squarely deny this understanding, we think the subsequent conduct and relation of these parties confirms the claim of the plaintiff in relation thereto.

As the business proceeded, the plaintiff from time to time sent to the Crosley Company lists of the delinquent loans and urged it to attend to the same. Through the depression the time required on the part of the Crosley Company to attend to this business increased; and one of the present employees of the

plaintiff company who was connected with the Crosley Company up to June 1, 1932, estimates that one-fifth of the expense of the Crosley Company was caused by the work of servicing the loans of the plaintiff, although the defendant Crosley estimates that a larger amount of time and work were required. The defendant Crosley testifies that he repeatedly, and on each of the various visits he made to the home office in Des Moines, requested that he be paid for servicing these loans. This is squarely denied by the officer of the plaintiff company to whom he says he made such request.

Aside from what has heretofore been said, the officer of the plaintiff company who had charge of these matters specifically denies that there was any talk about compensation for this servicing of loans between Crosley and the plaintiff's officer in charge of these matters. At one time a matter came up involving a large ditch tax against the land, which brought about a very complicated situation and a large amount of work on the part of the Crosley Company. In this particular instance the Crosley Company wrote the plaintiff calling attention to the large amount of work connected with this particular transaction, and suggesting that it ought to have compensation of $500 for looking after and closing up the matter. To this letter the president of the company replied: ''So far as your own personal services are concerned, do you not think that inasmuch as you are quite as vitally interested as the company, having placed the loans with us, and that you are interested in other items of indebtedness secured by this property, any charge for your services should be handled in a good deal the same way as they are provided for in any other loans that you procure for the company?''

Aside from this particular instance, in all this voluminous correspondence between the plaintiff and the defendant Crosley, covering from the year 1900 to June 1, 1932, there is not one word said by either the plaintiff or the Crosley Company about any charge for servicing these loans. The record also shows that the Crosley Company, in its dealing with all its other correspondents, serviced their loans the same as it did the plaintiff's, and did not make any charge therefor (except on certain private loans that it had made). In the latter part of the year 1931, Crosley had on one or two occasions, a conversation with one of the agents of the plaintiff company, in which Crosley suggested that, owing to the large amount of work in servicing these loans,

he.felt that the plaintiff ought to put Crosley on plaintiff's pay roll. Later this conversation was reported by the agent of plaintiff company to plaintiff, but nothing was done about the matter. The plaintiff at one time during these years advised the Crosley Company that it should cease from sending out notices of delinquency to its patrons on mortgages held by the plaintiff. Crosley (or one of his company) came to Des Moines and insisted that the order in relation to such notices should be modified so far as the Crosley Company was concerned, and as an explanation for such request said that the Crosley Company wanted to send out such notices and interview the delinquents because it helped its business to keep in touch with its patrons; and the order was modified accordingly.

Some time after the organization of the Crosley Company plaintiff appointed an agent to go into the Crosley territory and help look after these delinquent loans, and during all the time had one or more agents helping take care of these delinquent loans. They naturally went to the Crosley Company, and probably in most instances some member of the Crosley Company went with these special agents to look after the delinquent loans. Some complaint was made by the Crosley Company to the plaintiff about these agents thus sent out by the plaintiff, and when the Crosley party went out with the agent he usually had business of his own which was taken care of at the same time.

It is apparent from the record that the plaintiff never at any time expected to pay for the servicing of these loans by the Crosley Company, and we think it is equally apparent from the record that the Crosley Company did not expect the plaintiff to pay for such servicing of loans. We reach this conclusion more readily from the long history of the conduct of the business between these parties as shown from the record. The Crosley Company kept a complete set of books in relation to its business. There was not a charge of any kind made on said books at any time against the plaintiff for the servicing of these loans. The record shows that it was to the mutual interest of both of these parties that these loans were properly looked after. Even in the latter part of 1931, when Crosley had the conversation with the agent of the plaintiff, he did not then express himself that his company was entitled to be paid for past services, but suggested only that he thought the plaintiff ought to put him on its pay roll.

In view of these facts, and many other facts shown by the record, we reach the conclusion that, as between the Crosley Company and the plaintiff, the service performed in servicing these loans was a voluntary service, and that there was no expectation on the part of the plaintiff company to pay for the same, and no expectation on the part of the Crosley Company that it was to be paid for this service. Without attempting to further elaborate the facts in the case, we reach the conclusion on this question of servicing these loans that the defendant Crosley was not entitled to compensation therefor, and that the district court was in error in allowing such compensation. The fact that the Crosley Company never demanded compensation, that it never made any charges on its books against the plaintiff for such compensation, that it never charged any of its other correspondents for doing similar work, in addition to what has been heretofore referred to, all point to the necessary conclusion that what it did in relation to servicing these loans was voluntarily done, and without expectation of being compensated therefor.

We think this claim is purely a matter of afterthought, and that the same would never have been made or asserted had not the plaintiff started foreclosure of the mortgages involved herein.

In another count claim is made in relation to certain applications for loans which the plaintiff had at the time it established its office in Webster City, which were turned over to the Webster City office, and the defendant Crosley was thus deprived of his commission of 1 per cent which he would have received from the borrower had he completed these loans. We have gone over this record and reach the conclusion that the district court was right in allowing the defendant the commission which he would have earned had the work not been taken away from him before it was completed. The district court has listed these loans we think correctly, and allowed the defendant Crosley the commission that would have been earned on the same had they not been taken out of his hands. We think the district court was right in this respect, and approve its action; and also in allowing the plaintiff the amount paid out subsequently to June 1, 1932, for abstract bills, and for the discharge of taxes legally assessed and levied against the real estate involved in these actions, and certain sums which are set out in the petition and amendment thereto, and the sum of $26.50 to discharge a fire insurance premium, as provided in said decree.

The case is reversed and remanded to the district court for a decree in accordance with the findings and holdings in this opinion.—Reversed and remanded.

DONEGAN, C. J., and RICHARDS, PARSONS, KINTZINGER, HAMILTON, and ANDERSON, JJ., concur.