The bill in this suit is designed to impress a trust on profits made by the defendants on a resale of real estate purchased by the defendant Lieberfeld from the complainants.
More than a year before the transactions involved the complainants listed their property with a firm of real estate brokers, the members of which are defendants herein, to be sold for $50,000. Later, the son of the complainant Mrs. *Page 196 
Gordon was advised by Kaplan that it would be impracticable to secure $50,000, and it was agreed that $45,000 would be accepted. On April 17th, 1923, a contract to convey was drawn up by Gordon and signed by the complainants either that day or the day following, and an important fact in dispute is whether it was signed by the defendant Lieberfeld on April 18th or the 21st of that month. The defendants say that, immediately after signing the contract, Lieberfeld authorized Kaplan to resell, and thereupon, on April 20th, Kaplan offered the property to a man and his wife, named Herold, with whom he had previously transacted some business, and secured from them a deposit of $2,000 to purchase from Lieberfeld for the sum of $50,000. The theory of the complainants is that Kaplan knew at the time he secured the signatures to the first contract that he could provide a purchaser for $5,000 more, and that instead of protecting his principals he entered into a fraudulent conspiracy with Lieberfeld to have the latter secure title and divide with him the profits of their nefarious scheme.
There are some exceedingly suspicious facts connected with the conduct of the defendant Kaplan. For example, he originally put forward as the name of the purchaser one Pine, whose place was, subsequently, taken by Lieberfeld; but, it is explained, Pine and Lieberfeld had recently, in a joint adventure, made a profit in some real estate speculation, and Lieberfeld expected Pine to participate in the payment for the property of the complainants, and that the reason Pine's name was, subsequently, dropped, was his absence on a business trip from his home. Again, it is shown that part of the deposit and purchase price paid by Lieberfeld was advanced by Kaplan; but the explanation of this is that when Lieberfeld explained his inability to finance the purchase from the complainants on account of the absence of Pine, Kaplan, to save the situation, offered to assist him to the extent of the $2,500 that he lacked to make up the necessary amount. In addition, it is strange that Kaplan did not, in a period of more than a year that he had this property for sale, offer it to Herold, and yet within two days, according to his own testimony, *Page 197 
of the first contract being signed, he effected a resale to the Herolds whom he knew and with whom he had had previous experience. He also took from Lieberfeld a deposit of a thousand dollars on April 11th, but said nothing about this man, and represented Pine as the prospective purchaser. When facts such as these were brought to the attention of the complainants, it is not surprising that they should have felt that they had been defrauded of the difference realized on the two sales. But the difficulty is that alert as this court will be to prevent one from profiting by his fraudulent conduct, and even though direct evidence is unnecessary to make out the same, and witnesses will not be permitted to take refuge behind ridiculous stories, nevertheless one who undertakes to establish fraud of this character must make it appear by clear and convincing proof. In this case my mind is not so unalterably made up as to meet the above requirements. In other words, the complainants have not sustained the burden of proof.
It has also been attempted to prove that the sale to Herold was initiated prior to the original contract having become a binding instrument. It is not disputed that if Kaplan had completely discharged all of his duty to the complainants and bound a ready, willing and able purchaser to them, that he might immediately thereafter treat for a sale of the same subject-matter on behalf of the purchaser with anyone else. But the complainants say the contract of the parties here was not executed by Lieberfeld at the time Kaplan secured the promise of the Herolds to buy from Lieberfeld. The testimony upon this point from the complainants is not convincing and depends upon the memory purely and simply of a busy lawyer engaged in a great many transactions of a similar nature. On the other hand, there is, besides the testimony of the defendants, the indisputable evidence of Kaplan's check in the way of deposit to Mrs. Gordon, and deposited in her account in the Commercial Trust Company on April 18th, 1922. From this it would seem more probable that the contract to convey to Lieberfeld was completely executed by the parties two days before the resale to the Herolds. *Page 198 
The testimony of Herold and his family, taken at its face value, would be demonstrative of the most fraudulent practices upon the part of Kaplan. The latter's alleged slanderous story about Mrs. Gordon's son's behavior, together with the disgusting statement charged to have been made by Lieberfeld concerning his relations with Mrs. Gordon and a number of other facts, would stamp these two defendants as the most unscrupulous sort of characters. The attitude of Herold and the powerful motive he had for the deepest animosity against these men would compel any court to be exceedingly cautious in giving effect to his story. I find myself unwilling to give the credence to his story that is necessary to meet and overbear the perfect manner in which the proofs of the defendants match up and are borne out by the documentary evidence in the rather complicated transaction of the parties. It is incredible that in this long course of negotiations there would not have been present, even under the best laid and most carefully carried-out scheme, some slip that would have been fatal to the defendants. The complainants have failed to prove that while still negotiating, and before they were bound by a valid contract to convey to Lieberfeld, Kaplan secretly substituted another purchaser between the complainants and the Herolds.
I will advise a decree dismissing the bill as to all the defendants.