Young *v.* Hughes.

WILLIAM YOUNG, appellant,

*v.*

ANTHONY A. HUGHES and others, respondents.

1. A real estate broker employed to find a purchaser for land, is bound to disclose to his principal any facts known to him, material to the transaction, and, if the broker takes part in the negotiation, he is bound to exert his skill for the benefit of his principal.

2. Purchasers obtaining a contract for the sale of land through a real estate broker who, with their knowledge and in collusion with them, has concealed material facts from his principal or exerted his skill in the negotiation against his principal, cannot in equity enforce the contract, and such a contract will be set aside.

The appeals in this cause bring up for review two decrees of the court of chancery, one directing the specific performance of a contract for the sale of land, and the other dismissing a bill in the nature of a cross-bill, which had been filed for the rescission of the same contract. The opinion of the chancellor will be found in *Hughes* v. *Young, 4 Stew. 60.*

*Mr. Charles H. Hartshorne,* for the appellant.

I. Specific performance should be refused and the contract decreed to be void, because,

(1) Warren was employed by Young, the owner, as a broker, to negotiate, or to aid in negotiating, a sale of the property in question.

(2) A broker so employed is charged with the trusts and duties of an agent in negotiating the sale. The relations between him and his principal are fiduciary.

The principal bargains for the agent's zeal and vigilance for his own exclusive advantage. *Paley's Agency 10–33; Story's Agency* § *246; White & Tudor's Lead. Cas. in Eq. (ed. 1876) 239.*

The agent cannot become in any way secretly interested in the subject matter of the agency, adversely to his principal's interest. *Wharton's Agency* §§ *244, 245.*

Instances in which the rules have been applied are:

To a case of a sale in which the agent is interested. *Condit* v. *Blackwell, 7 C. E. Gr. 481.* Where the clerk of the broker, without the broker's knowledge, was interested in the sale. *Gardner* v. *Ogden, 22 N. Y. 327.* Where the broker employed to sell for a price fixed by the owner, was interested in the sale. *Kerfoot* v. *Hyman, 52 Ill. 512.* When the owner of land agreed to give the broker all he could get above a certain price per acre; the broker found a purchaser for a price above the sum fixed, and, before the sale, took from the purchaser an agreement that the purchaser should pay the broker $500 "for services in assisting to negotiate." *Everhardt* v. *Searle, 71 Pa. St. 256.* To a case of gratuitous service, where one offered to procure, for

a friend, stock at £3 per share, and, being authorized to do
so, purchased at £2 and kept the difference. *Kimber* v.
*Barber, L. R. (8 Ch. App.) 56*. Where a broker negotiated
for both sides an exchange of land, and took commissions
from both sides without their knowledge. *Farnsworth* v.
*Hemmer, 1 Allen 494.*

The authorities sustain the views above stated. Defini-
tion of the term " broker." *Wharton's Agency* § *695 ; Story's
Agency 28, 31 ; Shepherd* v. *Hedden, 5 Dutch. 340.* He is
agent of the person who employs him; he cannot secretly
accept compensation from, nor act in the interest, of the
adverse party. *Wharton's Agency* § *715 ; Story's Agency*
§ *31 ; Shepherd* v. *Hedden, 5 Dutch. 343 ; Dunlop* v. *Rich-
ards, 2 E. D. Smith 181 ; Pugsley* v. *Murray, 4 Id. 245.*
And this even when the broker takes no part in the nego-
tiations, but merely sends the purchaser to the vendor.
*Walker* v. *Osgood, 98 Mass. 348 ; Rice* v. *Wood, 113 Mass.
133 ; Raisin* v. *Clark, 41 Md. 158.*

The general principles of agency are applicable to the
relations between the broker and his principal. *Wharton's
Agency,* § *727.* The broker is ordinarily and almost inevita-
bly entrusted to a greater or less extent with the confidence
of his principal, and a knowledge of his views and purposes;
this is incompatible with like relations with the other party.
*Walker* v. *Osgood, 98 Mass. 348.*

In *Farnsworth* v. *Hemmer (1861), 1 Allen 494,* a real estate
broker had been employed " to negotiate a sale or exchange
of certain real estate." He charged commissions to both
parties. In an action to recover his commissions, the court
said : * * " The duty of the agent for the vendor is to
sell for the best price; of the agent of the purchaser to buy
for the lowest. * * It is of the essence of his contract
that he will use his best skill and judgment to promote the
interest of his employer." *Fish* v *Leser, 69 Ill. 394.*

The broker is bound to give his principal knowledge of
every fact material to the sale. *Farnsworth* v. *Hemmer,
supra; Hesse* v. *Briant, 6 DeG. M. & G. 623.* That the prin-

·cipal takes part in the negotiations, makes no difference. .Farnsworth v. Hemmer, supra; Walker v. Osgood, supra.

But it is claimed that brokers are classified; that, admitting a broker who is employed to negotiate a sale, may be charged with the duties and trusts of an agent, yet another class are only middlemen employed to bring vendor and purchaser together to make their own bargain; that such .are not charged with those duties and trusts, and it is said that Warren in this case belongs to the latter class. Such a distinction was recognized in Rupp v. Sampson, 16 Gray 398, ·where the broker was employed " to find some one to bring his principal in contact with parties who would do the business of importing rattans." But the case was qualified and explained in Walker v. Osgood, supra, in which it was held that the duty of finding purchasers for the land, created an agency which was incompatible with any engagement or service to the other side.

In Mullen v. Ketzleb (1870), 7 Bush (Ky.) 253, the court said: " Had they (the brokers) negotiated between the parties and in any degree thereby influenced them to make ·the trade, the principle of Lloyd v. Colston, 5 Bush 587 (a ·case in which it was held that the broker could not recover commissions from both parties), would have applied, but . there is no evidence of any. such contributory interference."

(3) Warren violated his duties as the broker or agent of ¯Young. He did so with the knowledge and connivance ·of the purchaser.

· This conduct in a broker is a breach of duty. Cases·cited above; also, Everhardt v. Searle, 71 Pa. St. ·56.

. (4) The breach of duty by the broker, having contributed ¬(with the buyer's connivance) to the making of.the contract, · it is voidable at the principal's option, whether he has been - injured by it or not.

It is a rule of public policy. Wharton's Agency § 715; Everhardt v. Searle, supra; Pomeroy on Spec. Perf. § 269; Hesse v. Briant, 6 DeG. M. & G. 623; Fisher v. Leser, 69 Ill. 394. · -

In *Hesse* v. *Briant*, there was no pretence that the principal was injured. He had set his own price. Although the agent had power to sell, yet the terms were fixed in the authority; the only discretionary power was to negotiate, which is the power of a broker. Yet specific performance was refused.

*Everhardt* v. *Searle* is decided upon principles which would suffice to annul the contract of sale, and because the broker secretly charged commissions to both sides. Yet in that case the agent got for his principal all that the principal wanted. Is it less wrong for an agent to betray his trust without reward, than to take a reward without betraying the trust?

II. (1) The price is less than the fair value of the property.

(2) The parties dealt upon unequal terms, the sellers being old, ignorant and without advisers; the purchaser was capable, experienced and shrewd.

(3) There was concealment, underhand dealings and misrepresentation by the purchaser. Under such circumstances specific performance will be refused.

These facts, apart from the question of agency, taken separately, are not sufficient to cause this court to refuse specific performance, but in connection with inadequacy of price, though only slight, with misrepresentations or underhand dealing, though it be only a chance that these operated unfairly, and that the vendor was injured thereby—upon these facts connected with such circumstances the court will refuse specific performance. *Fry on Spec. Perf. 192, 177; Pomeroy on Spec. Perf.* §§ *175 and note, 179, 184, 196, 210, 268, 269; Graham* v. *Pancoast, 30 Pa. St. 89; Plummer* v. *Kepler, 11 C. E. Gr. 481; Bonnet* v. *Saddler, 14 Ves. 525; Hesse* v. *Briant, 6 DeG. M. & G. 623; Fish* v. *Leser, 69 Ill. 394; White & Tudor's Lead. Cas. in Eq. (ed. 1877), note to Wollam* v. *Hearn, 1035.*

Instances of circumstances which alone or combined with inadequacy of price have been considered sufficient ground.

Young v. Hughes.

to refuse specific performance. *Twining* v. *Morris, 2 Bro. C. C.*, approved by Lord Eldon in *Mortlock* v. *Butler, 10 Ves. 305; Philip* v. *Duke of Buckingham, 1 Vern. 227*, cited in *Hilliard on Vendors 339; Sugden on Vendors *219; Popham* v. *Eyre, Lofft 786; Cadman* v. *Horner, 18 Ves. 10; Fry on Spec. Perf. 292.*

III. The complainant cannot enforce the contract because he is insolvent. *Fry on Spec. Perf. 381; Price* v. *Assheton, 1 You. & Coll. 441; Neal* v. *McKenzie, 1 Kay 474;* but see, *contra, Corson* v. *Mulvany, 13 Wright 88.*

This point is material, because the contract calls for a *bond* and mortgage. If complainant is insolvent, the bond is worthless. The court cannot assume that the bond was an immaterial element of the security.

IV. There is a want of parties in the suit for specific performance. Moore is a necessary party; no decree can be made without him. *Daniell's Ch. Pr. 230; Chadwick* v. *Maden, 9 Hare 188.*

*Mr. J. Garrick* and *Mr. W. A. Lewis*, for respondents.

The contract, on its face, is a valid one. The vendee has performed all things under the contract on his part to be performed, so far as the vendor has permitted, and stands ready and offers to pay the balance of the purchase-money. Unless the appellant makes out a sufficient case to set the contract aside, the respondents are entitled to a decree, and the burden is upon the appellant to make out such a case.

He who seeks the rescission of a contract on the ground of fraud, must prove his right to the relief. *Bailey* v. *Kitten, 5 Ala. 282.*

The reasons given by the appellant, in his answer to the original bill and in his cross-bill, for setting aside the contract, may be reduced to these:

(1) Inadequacy of price.

(2) Advantage taken of the age and weakness of the appellant and his wife.

(3) That the vendee and others conspired with the appellant's agent to procure a sale of the property for less than the appellant was willing to accept.

(4) That the vendee purchased the property on behalf of. one Joseph E. Moore, a fact which was not made known to the vendors.

(5) That the vendors were intimidated by false statements made by their agent in reference to a lease on the property and in reference to the value of the property.

(6) Insolvency of the vendee.

I. As to inadequacy of price.

Mere inadequacy of price affords no grounds of relief, either against a private contract or a public sale; but the inadequacy may be so gross as to shock the conscience, and to amount to evidence of fraud. *Cummins* v. *Little, 1 C. E. Gr. 38; Marlatt* v. *Warwick, 3 C. E. Gr. 108; Hodgson* v. *Farrell, 2 McCart. 88; Wintermute* v. *Snyder, 2 Gr. Ch. 490; Shaddle* v. *Disborough, 3 Stew. 370, 384; Ready* v. *Noakes, 2 Stew. 497.*

II. As to advantage being taken of the age and weakness of the appellant and his wife.

Capacity to contract will be held not only where there is no evidence, and no rule against it, but when the evidence or the rules or the agreement leave it in doubt. *2 Parsons on Cont. (5th ed.) 273.*

There can be no objection to a contract made with a man in the habit of buying and selling and transacting his own business, because he was illiterate, unless he has been grossly deceived or fraudulently imposed upon; and a person being intoxicated, and not in a situation to judge correctly, or act with prudence, will not avail him to avoid his contract, unless an unfair or improper advantage was taken of his situation. *Rodman* v. *Zilley, Sax. 320.*

III. As to vendee and others conspiring with the vendor's agent to procure a sale of the property for less than the vendor was willing to accept.

There is absolutely no evidence to establish such a conspiracy. Aside from the fact that the property was to be purchased by Hughes for Moore, which was not made known to the vendors, and which we will consider under another head, the transactions between Moore, Hughes and Warren, cannot be attacked in any way. There was no agreement on the part of Warren to procure a sale. It was simply an offer made for the property, which was to be submitted to the owners, for their assent or disapproval. *Fellows* v. *Groydye, 1 Russ. & Myl. 83 ; Story's Eq. Jur.* §§ *195, 197, 202, 203, 207.*

IV. As to Hughes purchasing the property on behalf of Moore, a fact which was not made known to the vendors.

Is the fact that the property was bought by Hughes for Moore, and that the vendors were not so informed, material? What difference could it make to the vendors, after they had sold their property and got their money, who should buy it? It would cause them neither profit nor loss, if the vendee should sell to another, for if it would, they would provide against it in their agreement. They sold absolutely. The vendee had the right to sell to whom he pleased. Could they have got a better price from Moore?

The true definition of undue concealment, which amounts to a fraud in a court of equity, and for which it will grant relief, is non-disclosure of those facts and circumstances which one party is under some legal or equitable obligation to communicate to the other, and which the other has a right not merely *in foro conscientiæ* but *juris et de jure* to know. *Story's Eq. Jur.* § *207 ; Fry on Spec. Perf. (2 Am. ed.) 291, *208; Laidlaw* v. *Organ, 2 Wheat. 178, 195 ; Fisher* v. *Budlong, 10 R. I. 527.*

V. As to intimidation and false representations by agent.

To constitute a misrepresentation which will prevent a decree for specific performance, the statement in question must be so material to the contract built on it, that if the

statement be false the contract becomes one which it would be unconscionable for the party who has made the statement to enforce. The misrepresentation must be shown to have operated to the prejudice of the defendant. *Scott* v. *Shiner, 12 C. E. Gr. 185.* The misrepresentation must be *material. Story's Eq. Jur. § 195.* The party must have been *misled* by the misrepresentation. He must have been misled to his *injury* and *prejudice. Id. §§ 202, 203.*

A false representation, in order to have the full effect of fraud, must relate to a substantial matter of fact, and not merely to a matter which rests in opinion, or estimate, or judgment. *2 Parsons on Cont. (5th ed.) 778.* See *Wuesthoff* v. *Seymour, 7 C. E. Gr. 66 ; Conover* v. *Wardell, 7 C. E. Gr. 492.*

VI. Insolvency of the vendee.

That was not the real objection of the vendors. That objection was not made until after the suit was commenced, although the vendors were informed of the alleged insolvency on the same day that they sold the property. Their action was a waiver of any such objection. The insolvency of Hughes is not clearly proved. But, assuming that it is proved, it is immaterial.

The insolvency of a purchaser at the time of sale can be made use of as a defence only where the vendor would incur loss; or, at least, would be in danger of incurring loss in consequence of it. *Mere* omission of a purchaser to disclose his insolvency is not sufficient to infer fraud, so as to avoid a sale. *Nichols* v. *Pinner, 18 N. Y. 295 ; Wright* v. *Brown, 67 N. Y. p. 1 ; Hopper* v. *Hopper, 1 C. E. Gr. 147.*

VII. The contract is certain and fair, consideration adequate and vendee ready to perform, and has tendered performance. And the decrees of the court below, ordering specific performance and dismissing the cross-bill, are equitable, and should be affirmed. *Locander* v. *Lounsbury, 9 C. E. Gr. 417, 10 C. E. Gr. 554; Hopper* v. *Hopper, 1 C. E. Gr. 147 ; Crane* v. *Decamp, 6 C. E. Gr. 414.*

Young *v.* Hughes.

The opinion of the court was delivered by

MAGIE, J.

The bill in this cause was filed by Anthony A. Hughes against William and Sarah Young, to obtain a decree for the specific performance of a contract in writing, whereby William and Sarah Young agreed to sell and convey to Hughes certain real estate in Jersey City, for the price of $13,000. The Youngs filed an answer to that bill, and thereby set up, as a defence, fraud on the part of Hughes, and collusion by him with Joseph Warren, a real estate agent in the employ of the Youngs, whereby they were fraudulently induced to enter into the contract sought to be enforced.

The Youngs also filed a bill, in the nature of a cross-bill, against Hughes, Joseph Warren, William E. Flemming and Joseph E. Moore, in which they asked a decree to annul and set aside the contract on the same grounds disclosed in the answer to the original bill. Flemming and Moore were made parties to this bill, because it was alleged that Hughes, in making the contract in question, was acting, not for himself, but as the agent of one of them. Answers were filed to this bill, denying the fraud and collusion, and both causes were heard together on the pleadings and proofs. The chancellor, upon the hearing, decreed the performance of the contract, as demanded by the original bill, and dismissed the cross-bill. These appeals bring here, for consideration, the propriety of the decrees so made.

The evidence shows that the contract in question was entered into by the parties in the presence of Joseph Warren. He drew and was the subscribing witness to the written agreement which they all executed. He is therein described as "the agent for selling the property," and it provided that he was to receive from the Youngs $200 "commission for selling the same." He also testifies that he had the property in question in his hands for sale, when he could procure a customer at a price that would be satis-

factory, and that the property had been given into his charge
for that purpose by the Youngs, from whom he expected to
receive a commission in case he succeeded in obtaining a
purchaser.

At the time the contract was entered into, Joseph E.
Moore was a tenant, in possession of the most valuable part
of the premises, under a lease which would expire in a few
months. Moore had, within the two years previous, entered
into some agreement with the Youngs, by which he had
either agreed to buy, or had taken the refusal of the
property in question, at the price of $20,000. This agree-
ment had, however, either expired or been surrendered.
At the time the contract was executed, Young had leased
the premises, or the most valuable part of them, to one
Piaget, for a long term; but the contract was taken
expressly subject to the lease.

The evidence further shows that Moore was desirous of
buying the property, but that he believed the Youngs might
be unwilling to treat with him, at least on as favorable
terms as they might with a stranger. He therefore pro-
cured Hughes, who agreed to act for him, and to buy the
property in his (Hughes's) name, but with money to be fur-
nished by Moore. In pursuance of this design, Moore
introduced Hughes to Warren as an intending purchaser of
the property, and requested Warren to bring Hughes into
communication with the Youngs. Warren knew of the
motives that influenced the employment of Hughes, and
was, besides, distinctly informed that Hughes was acting
only for Moore, who was the real party to the transaction.
He was also told by Moore that he was willing to give
$13,000 for the property.

Warren, under these circumstances, introduced Hughes
as an intending purchaser, to the Youngs, and was present
and took an active part in the negotiation between them,
which resulted in the contract. He did not disclose to the
Youngs the fact that Hughes was not acting for himself but
for another, and he suffered them to suppose that Hughes

Young *v.* Hughes.

was the real party in interest. He did not intimate that the real purchaser, endeavoring to treat with them, was Moore, their tenant, with whom they had previously negotiated for a sale of the property. Nor did Warren, at any time, inform them of the amount which he knew the intending purchaser was prepared to give. On the contrary, he offered or permitted Hughes to offer, in his presence, first, $12,000, and then $12,500, without telling the parties by whom he was employed that Hughes was instructed by Moore to pay as much as $13,000 for the property, and, as Hughes declares, to use his own judgment about giving more.

The relation which a real estate agent or broker bears to his principal is somewhat peculiar, and his power, as agent, to bind his principal, is limited. *Shepherd* v. *Hedden, 5 Dutch. 334; Morris* v. *Ruddy, 5 C. E. Gr. 236.* But there can be no question that he assumes some duties to his employer—such as to find a purchaser for the property, to bring the purchaser into communication with his employer, and to use his efforts to forward the negotiation between them in the interest of his employer. To this extent at least he becomes an agent. As in all cases of agency, a fiduciary relation is established, which requires, on the part of the agent, within the sphere of his employment, fidelity and good faith to his employer. Among other things, he is bound to disclose to his principal all facts within his knowledge which are or may be material to the matter in which he is employed. The principal has bargained for the agent's skill and experience, and is entitled to expect his active aid in the conduct of the negotiations. These are familiar doctrines, which are as applicable to the relation between real estate agents and their principals as they are to the relation between other agents and principals.

Testing the conduct of Warren by such rules, it seems impossible to escape the conclusion that he is chargeable with serious dereliction of duty. Employed to bring to his principal a purchaser of his property, he presented Hughes as the person to be negotiated with, while he knew that

Hughes was bargaining for the benefit of Moore, the tenant, who had previously undertaken to buy, and whose interest it was to buy the property.  He entirely concealed Moore's connection with the purchase from his principal.  He also concealed from his employer the amount the purchaser was prepared to give, and made offers in behalf of Hughes, and permitted offers to be made, for less amounts.  It is impossible to read the testimony without concluding that the skill and experience of Warren were not exerted for, but rather against, his principal in the negotiation.

The effect of concealment and neglect of duty, such as this, upon the transaction, so far as Warren is concerned, does not at all depend on the question whether or not the result was injurious to the principal.  The contract is affected by the misconduct of the agent from considerations of public policy rather than of injury to the principal.  The rule which applies to trustees has been equally applied to the relation between the real estate broker and his principal. It matters not that there was no fraud meditated, and no injury done.  The rule is not intended to be remedial of actual wrong, but preventive of the possibility of it.  *Everhardt* v. *Searle, 71 Pa. St. 256.*  So that it seems unnecessary to consider the evidence relating to the alleged inadequacy of price.

These principles have been elsewhere applied to this relation between real estate agent and principal.  Thus, in *Farnsworth* v. *Hemmer, 1 Allen 494,* Chief Justice Bigelow declares that a real estate broker commits a fraud on his principal, the seller, by undertaking secretly to act as the broker or agent of the purchaser.  See, also, *Walker* v. *Osgood, 98 Mass. 348 ; Rice* v. *Wood, 113 Mass. 133 ; Dunlop* v. *Richards, 2 E. D. Smith 181 ; Raisin* v. *Clark, 41 Md. 158.*

The case of *Hesse* v. *Briant, 6 DeG. M. & G. 623,* is in all respects similar to the matter now considered.  The bill was there filed for the specific performance of a contract for the sale of real estate, which was entered into through the agency of a solicitor, who was found to be acting for both

Young v. Hughes.

parties and to have concealed from the seller the name of the purchaser. It also appeared that the real purchaser had previously had direct negotiations with the seller for the sale of a part of the property, which had proved abortive. The chancellor, reversing the decision of the vice-chancellor, refused to compel the performance of the contract, declaring that such a transaction required the " most perfect good faith and openness of dealing," and that the concealment of the purchaser's name showed that there was not that " fair and open dealing between the parties which the relation in which they stood to each other demanded."

If Moore and Hughes had procured the contract in question without previous concert and collusion with Warren, they would be entitled to its benefit. When the purchaser deals at arms' length with the seller, he is under no obligation to disclose how or in what capacity he is dealing. It may be that even his misrepresentation of his status might not be destructive of his contract, as seems to have been held in *Fellows* v. *Groydye, 1 Russ. & M. 83.* If so, it is manifestly upon the ground that the purchaser owed no duty to the seller which such misrepresentation would violate. And so it may well be that Hughes, as was held by the chancellor in this case, was under no obligation to disclose to Young the fact that he was acting for Moore. But this view of the case is too narrow to justify the decision. Moore and Hughes incited and were partakers in the misconduct of Warren, the trusted agent of Young. They obtained the contract by means of this misconduct which they had suggested and aided. Under such circumstances they cannot ask a court of equity to exercise its discretionary power to enforce a contract so obtained.

Nor do I think that Young ought to be compelled to defend himself against such a contract in a court of law. In regard to this aspect of the case, I adopt the language of Lord Justice James, in *Panama S. F. T. Co.* v. *India Rubber &c. Co., L. R. (10 Ch. App.) 515, 526.* " According to my view of the law of this court, I take it to be clear that any

surreptitious dealing between one principal and the agent of the other principal, is a fraud on such other principal cognizable in this court.  That I take to be a clear proposition, and I take it, according to my view, to be equally clear that the defrauded principal, if he comes in time, is entitled at his option to have the contract rescinded."

The decrees appealed from should, therefore, both be reversed, the bill for specific performance should be dismissed, with costs, and, upon the cross-bill of William Young, there should be a decree in his favor granting the relief prayed for by that bill, with costs.

Decrees unanimously reversed.