LEDIRK AMUSEMENT CO., INC., and COLONIAL THEATRE, INC., complainants-appellants,

*v.*

SAMUEL SCHECHNER and R. L. S. CORPORATION, defendants-respondents.

[Argued February 7th, 1944. Decided May 15th, 1944.]

*Mr. Israel B. Greene,* for the complainants-appellants.

*Messrs. Bilder, Bilder & Kaufman (Mr. Samuel Kaufman,* of counsel), for the defendant-respondent Samuel Schechner.

*Messrs. Kessler & Kessler (Mr. Samuel I. Kessler* and *Mr. William L. Vieser,* of counsel), for the defendant-respondent R. L. S. Corporation.

The opinion of the court was delivered by

PORTER, J.

The relief sought by complainants must be based on their representation that Schechner, a defendant, while their agent or fiduciary violated his trust by purchasing the properties desired by complainants for himself, in the name of the defendant R. L. S. Corporation. The bill prays that the defendants be decreed to convey the premises to the complain-

ants and that discovery be made of all profits earned in the interval and that a decree for damages sustained by complainants be made against the defendants.

The learned Vice-Chancellor advised a decree dismissing the complaint. This appeal is from the decree so advised.

The complainant corporations were owned by Moe Kridel and his two sons. They held long term leases on the two properties and operated moving picture theatres in them. These properties were owned by the Mutual Theatre Company which was under the control of John J. Brothers. He was in poor health and desirous of selling them and had negotiated with Kridel for their sale but without success. Schechner was a friend of long standing of Kridel and knew that the latter desired to purchase the properties. They often discussed the matter while visiting socially at each other's homes. Schechner was engaged in business as a real estate and mortgage broker. He was engaged by Brothers in the fall of 1939 to procure a new mortgage loan on the properties and succeeded in that undertaking. He was thereupon authorized by Brothers to act as broker in finding a purchaser for the properties. Schechner thereafter negotiated with Kridel for the sale but without success. Finally on June 26th, 1940, a contract was entered into between the Mutual Theatre Company and the R. L. S. Corporation for the sale and purchase of both theatres. Schechner acted as broker and had a substantial interest in the R. L. S. Corporation which was formed for the purpose of acquiring these properties. The complainants allege that Schechner lied to them concerning this transaction and that they did not learn that he was interested financially in the purchase until about two years later, after which this suit was promptly instituted. It is their contention that Schechner was their agent to procure the properties for them for the lowest selling price and that he violated their confidence and trust. Schechner, it appears, never had an exclusive agency for the property and denies that he represented to complainant that he had. He also disclaims agency for the complainants, but on the contrary says that as the agent of the Mutual Theatre Company he was in duty bound to secure a customer at the best price

from a seller's standpoint. He says that this two associates in the purchase were experienced in the moving picture business, were not originally his clients but became interested in this purchase through a New York broker. He says that later he was also retained; that his commission was split with the New York broker; that his two associates were financially unable to make the purchase without assistance; that he was invited to participate, and did so after fully acquainting Brothers with all the facts and getting his approval for the transaction. He denies that his associates are not *bona fide* stockholders, as complainants allege, and says that each had purchased respectively a 37½ and 25 per cent. interest in the corporate stock, while he holds a 37½ per cent. interest.

The issues of this case are largely factual. A careful consideration of the testimony and its inferences leads us to the conclusion that the complainants failed to establish, as was their burden, the truth of the charges set forth in the complaint. The Vice-Chancellor we think entertained that view. In any event such is our view. This, therefore, leads to an affirmance of the decree of dismissal.

The learned Vice-Chancellor based his conclusion on another ground. His reasoning was that the complainants had not come into the court of equity with clean hands; they were willing to deal with Schechner who, they say, represented himself as the exclusive agent of the owner to whom Schechner owed a first duty of obtaining the highest sale price. Yet, at the same time they expected him to act as their confidential agent for obtaining the property at the lowest price. The court's conclusion on the fact was a legitimate one and the application of the doctrine of unclean hands quite appropriate in the circumstances.

The decree is affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, DILL, JJ. 12.

*For reversal*—HEHER, PERSKIE, JJ. 2.