Complainant, Devia Realty Corporation, owned and controlled by Mrs. Iturra, was the owner of a large apartment building in Jersey City known as 131 Kensington Avenue. The defendant Joseph J. Garibaldi Organization (hereinafter referred to as Garibaldi) is a corporation engaged in the business of acting as broker or agent for individuals and corporations desirous of selling or purchasing real property. In the early part of 1945 (all dates hereinafter refer to that year) *Page 158 
Mrs. Iturra gave Garibaldi, at its solicitation, authority on behalf of her corporation to act as broker or agent for the sale of its apartment building. One Bouchoux, a Garibaldi employee, brought Lucarelli and also Urban, the latter an associate of Lucarelli, to inspect the apartment building. Lucarelli owned property in Jersey City known as 158 Wegman Parkway which through Bouchoux was offered to Mrs. Iturra in exchange for the Kensington Avenue property, in addition to cash. Bouchoux took Mrs. Iturra to inspect the Wegman Parkway property and told her the asking price of that property was $18,000. She testified she said she would not be interested in it at that price, while Bouchoux testified she said she would not be interested in it at any price and wanted all cash for the Kensington Avenue property and that she then suggested Garibaldi itself take the Wegman Parkway property. Mrs. Iturra denied making such suggestion. Bouchoux continued efforts to bring Lucarelli and Mrs. Iturra together on the purchase and sale of the Kensington Avenue property with the result that Lucarelli gave Garibaldi a written offer for it in the name of 126 Fairview Avenue Corporation, a corporation in which he was a stockholder, and told Bouchoux to get some one to act for him in its purchase and he also gave Garibaldi a check for $1,000 to pay as a deposit on a contract for the sale of the Kensington Avenue property in the event that Mrs. Iturra should agree to sell on the terms Lucarelli had offered. Bouchoux then negotiated further with Mrs. Iturra, telling her that Lucarelli had dropped out as a possible purchaser, with the result that Mrs. Iturra agreed on a price for which she would sell the Kensington Avenue property and Bouchoux took her to Garibaldi's office and had her execute a contract dated August 14th whereby, in the name of her corporation, she agreed to sell the equity in the Kensington Avenue property to one Gratz for $23,000 cash subject to a mortgage for $188,000, on which contract she was paid a deposit of $1,000 by Garibaldi's check, by which check it was concealed from Mrs. Iturra that the deposit was actually made for Lucarelli's benefit. That contract also provided for payment of $1,500 commission to Garibaldi for services in negotiating the contract. Gratz was an employee of Garibaldi *Page 159 
who used him as a dummy for Lucarelli, or for Lucarelli's corporation which subsequently took title, which fact was not disclosed to Mrs. Iturra. On August 29th Bouchoux again took Mrs. Iturra to Garibaldi's office and had her execute a contract under that date whereby she agreed for her corporation to sell its apartment building to 126 Fairview Avenue Corporation for the same consideration stated in the Gratz contract, and Gratz assigned his contract to the Fairview Avenue Corporation. On that occasion Mrs. Iturra was paid a further deposit of $2,000 by Garibaldi's check, which sum had theretofore been paid by Lucarelli to Garibaldi. I believe Lucarelli was present when Mrs. Iturra executed the contract to sell to his corporation but he did not sign that contract on behalf of his corporation. On October 15th Mrs. Iturra's corporation conveyed the Kensington Avenue property to the Fairview Avenue Corporation and out of the purchase money then due her $1,500 was deducted and paid to Garibaldi for Garibaldi's commission as agreed on and Garibaldi gave her a receipt therefor.
At or about the time Mrs. Iturra was induced to execute the Gratz contract, Lucarelli had agreed to convey his Wegman Parkway property to Garibaldi for $9,000 and August 24th Garibaldi paid Lucarelli $250 as a deposit on such sale. August 29th Lucarelli executed a contract to sell his Wegman Parkway property to Garibaldi for $9,000 and October 15th Lucarelli delivered his deed to Garibaldi pursuant to that contract. The contract whereby Lucarelli agreed to convey the Wegman Parkway property to Garibaldi discloses by the recitals therein that the Fairview Avenue Corporation had authorized Garibaldi to act in its behalf for the purchase of the Kensington Avenue property and that as part consideration for such services Lucarelli had agreed to convey the Wegman Parkway property to Garibaldi; that Garibaldi was purchasing the Wegman Parkway property for resale in order to secure commissions as broker for its services to the Fairview Avenue Corporation in the purchase by it of the Kensington Avenue property. Thus in the sale and purchase of Kensington Avenue property Garibaldi was acting as broker for the purchaser without informing Mrs. Iturra, the seller, of that *Page 160 
fact and was seeking commissions from both purchaser and seller for its services.
Prior to the delivery of the deed for the Wegman Parkway property and on September 15th Garibaldi accepted a deposit from one Palo on account of the resale of that property, and three days later Garibaldi entered into a contract to convey the Wegman Parkway property to Palo and wife for the consideration of $16,750 and conveyance was subsequently made pursuant to the terms of that contract. Thus it appears that Lucarelli was willing to take a loss of $7,750 on his Wegman Parkway property in order that he might acquire for his corporation the equity in the Kensington Avenue property for $23,000. In other words that he was willing to take over the Kensington Avenue property at a cost to him of $30,750 and it also appears that in addition to the $1,500 commission Garibaldi had agreed to accept from Mrs. Iturra for its services in selling the Kensington Avenue property, it was indirectly receiving a commission of $7,750 from Lucarelli for its services in acquiring that property for Lucarelli's corporation at $23,000. Mrs. Iturra claims that she did not learn of the conveyances of the Wegman Parkway property to and by Garibaldi until shortly before this suit was instituted and by this suit complainant seeks to recover from Garibaldi the profit realized by Garibaldi as a result of its acquisition of the Wegman Parkway property and also to receive back the $1,500 commission paid by complainant to Garibaldi.
Long ago our Court of Errors and Appeals declared in Young v.Hughes, 32 N.J. Eq. 372, that when a real estate broker undertakes to find a purchaser for property entrusted to him for sale, he assumes a fiduciary relation toward the property owner and absolute fidelity and good faith are required of him in his dealings with his principal and that he is bound to disclose to his principal all facts within his knowledge which are material in the business in which he is employed. That declaration was based on considerations of public policy even if no injury should result to a principal by reason of his agent's concealment of facts. It was a statement of the general principles which govern the fidelity of agents toward their principals and that declaration has been *Page 161 
reiterated in many cases in this state among which areSternberger v. Young, 73 N.J. Eq. 586; Rogers v. Genung,76 N.J. Eq. 306; Nagle v. McCoy, 94 N.J. Eq. 790; Gordon v.Kaplan, 99 N.J. Eq. 390; Sun Building and Loan Association v.Rashkes, 119 N.J. Eq. 443; Goldstein v. Marsella, 136 N.J. Eq. 521;
affirmed, 137 N.J. Eq. 513. If Garabaldi would escape the effect of this positive rule of law the burden is on it to show that Mrs. Iturra knew at the time she executed the contract with Gratz that Gratz was a dummy for Lucarelli and that she was made fully acquainted with the fact that Garibaldi intended to acquire title to the Wegman Parkway property at a price below its fair market value for the dual purposes of aiding Lucarelli in purchasing the Kensington Avenue property at his own figure and securing for Garibaldi a commission from Lucarelli in addition to commission from the complainant corporation. As to the first proposition there is no doubt that Garibaldi's agents represented to Mrs. Iturra that Lucarelli was no longer interested in the purchase of her property and that she relied on that representation when they induced her to enter into a contract with Gratz and that they concealed from her the fact that Gratz was a dummy provided by Garibaldi for the purpose of securing complainant's property for Lucarelli's corporation. As to the second proposition the testimony is somewhat in conflict.
For Garibaldi the testimony of two of its representatives is that they informed Mrs. Iturra that Garibaldi was purchasing the Wegman Parkway property from Lucarelli and that she made no objection. She testified that she never was so informed and it is not claimed on behalf of Garibaldi that the details of that purchase were made known to her. The most that can be said of the testimony of Garibaldi's representatives is that they made the bare statement that Garibaldi was purchasing the Wegman Parkway property; they did not tell her that conveyance of that property was to be made by Lucarelli at a price much below its market value for the purpose of enabling Garibaldi to realize a fee or commission out of profit on resale for obtaining the Kensington Avenue property for Lucarelli, or his corporation, at a price below *Page 162 
what Lucarelli was willing to have that property cost him. Whatever statement was made to Mrs. Iturra concerning Garibaldi's intention to acquire the Wegman Parkway property could only have been made after she had executed the contract on behalf of her corporation to sell the Kensington Avenue property to Gratz, because Garibaldi's deposit was not made to Lucarelli until ten days later.
It is further contended for Garibaldi that Mrs. Iturra became aware of such purchase and made no objection thereto on August 29th when she executed the contract to convey the Kensington Avenue property, on which occasion the contract between Lucarelli and Garibaldi was executed; also on October 15th when the deed for the Kensington Avenue property was delivered to Fairview Avenue Corporation, on which latter occasion the deed from Lucarelli to Garibaldi was also delivered and Garibaldi's check for the balance of the purchase price of Wegman Parkway, drawn to Lucarelli's order, was endorsed by Lucarelli and delivered to Mrs. Iturra for part of the purchase price Lucarelli's corporation was required to pay for the Kensington Avenue property. It does not appear that on either of those occasions any one then engaged Mrs. Iturra in conversation and directly told her that Garibaldi was engaged in a transaction involving the purchase of the Wegman Parkway property, but it is argued that because she was in the room with the parties who were engaged in such transaction she must have heard whatever discussions were had concerning it. The arrangements for the purchase and sale of Wegman Parkway property had been made prior to August 29th and all that was done that day was the execution of a prepared contract, and all that was done October 15th was the execution and delivery of a prepared deed pursuant to that contract and payment of the balance of the consideration. Mrs. Iturra's presence on August 29th was solely for the purpose of executing a contract with the Fairview Avenue Corporation, and on October 15th for the purpose of closing title under that contract and there was no reason why she should have had any interest in any business then being transacted other than her own. She denied that she heard any discussion about the Wegman Parkway property on either *Page 163 
occasion. The fact that she accepted as part of the purchase price for the Kensington Avenue property a check drawn by Garibaldi to Lucarelli's order means little because all previous payments made to her on account of the Kensington Avenue property had been made by Garibaldi's checks. Garibaldi, standing in a fiduciary relation toward Mrs. Iturra, was under a duty to make a full and explicit disclosure to her of all facts known to it having any bearing on the sale of the Kensington Avenue property and especially of his dealings with the person who was concerned with the purchase of that property, and that duty required that on August 29th it should have exhibited to Mrs. Iturra the contract which was then being executed between Lucarelli and Garibaldi so that she would have full notice of its terms.
Under Garibaldi's employment as broker for complainant it was its duty to act solely in complainant's interest and to make known to Mrs. Iturra all facts which it was material for her to know at the time she executed the contracts for her corporation, first with Gratz and subsequently with Lucarelli's corporation, and when the deed was delivered pursuant to the latter contract. The evidence shows, however, that she was not informed by Garibaldi that Gratz was a dummy for Lucarelli or that Garibaldi was acting as broker for Lucarelli's corporation for the purpose of securing a contract from her with that corporation, nor was she told directly that Garibaldi was being paid a commission by Lucarelli for securing a contract from her for his (Lucarelli's) corporation and I conclude that Garibaldi has not sustained the burden of showing that nevertheless Mrs. Iturra was aware of all of those facts and waived objection to them. The result is that I find complainant is entitled to receive the profit of $7,750 realized by Garibaldi on its resale of the Wegman Parkway property to Palo and wife and that Garibaldi should also be required to return to complainant the $1,500 commission paid by it to Garibaldi. Porter v. Woodruff, 36 N.J. Eq. 174; Rogers
v. Genung, supra; Nagle v. McCoy, supra; Gordon v. Kaplan,supra; Sun Building and Loan Association v. Rashkes, supra;Conant v. Pettit, 92 N.J. Law 543; Carpenter v. Overland TireCo., 102 N.J. Law 196. *Page 164 
In the transfer of title to the Wegman Parkway property from Garibaldi to Palo and wife the consideration of $16,750 was received by Garibaldi in the form of $7,250 cash and a bond and purchase-money mortgage of $9,500 carrying interest at 5%. The decree to be entered herein should direct Garibaldi to assign to complainant an interest in said mortgage to the extent of $7,750 and that Garibaldi pay complainant interest at the rate of 5% on said sum of $7,750 from October 15th, 1945, to the date of such assignment and that Garibaldi also pay complainant $1,500 with interest from October 15th, 1945. *Page 165