This suit concerns a written contract to buy and sell premises 33 Washington Street, Mount Holly, New Jersey. Complainant is the vendor therein, the defendant Melvin J. Fox is the vendee, and the defendant William H. Absalom is the *Page 431 
real estate broker who negotiated the sale. The complainant prays rescission and cancellation of the contract; the defendant Melvin J. Fox, by way of counter-claim, seeks specific performance of the agreement; and the defendant William H. Absalom seeks exoneration of the charges of fraud and misrepresentation — of double-dealing, upon which the complainant bases her claim to relief.
Complainant charged in her bill, and it is the theory of her case, that the defendant Melvin J. Fox, or the corporation Equity Realty Company, being the owner of a moving picture theatre in Mount Holly, determined to erect a new and larger theatre building; that, to that end, he or it purchased several centrally located business properties; that, encountering unexpected difficulty in obtaining possession, it was decided to sell those properties and obtain another site; that he or it engaged the defendant Absalom as agent to procure, if possible, the Washington Street properties of the complainant and Mrs. Heilbron, and promised him, if he succeeded, the sale on commission of the aforesaid business properties; that, while so engaged by the defendant, he solicited the complainant to appoint him her agent, and concealed from her his agency for the defendant. These charges are categorically denied by the defendants.
Complainant invokes the long established and familiar rule that the relation of a real estate broker or agent to his principal is a fiduciary one, requiring fidelity and good faith on his part within the sphere of his employment and the disclosure to his employer of all facts within his knowledge which are or may be material to the matter in which he is employed. Young v.Hughes (Court of Errors and Appeals,) 32 N.J. Eq. 372, 383;Ledirk Amusement Co., Inc., v. Schechner, 133 N.J. Eq. 602;33 Atl. Rep. 2d 894; affirmed, 135 N.J. Eq. 209;37 Atl. Rep. 2d 823. This rule is founded upon public policy and not upon injury suffered by the principal. "The rule is not intended to be remedial of actual wrong, but preventative of the possibility of it." Young v. Hughes, supra.
The rules of law pertinent to this cause being certain, the responsibility of this court is to resolve the facts as they have *Page 432 
been established by the evidence. Incidentally, credibility of the witnesses must also be determined. Riehl v. Riehl (Courtof Chancery), 101 N.J. Eq. 15; 137 Atl. Rep. 787.
The important facts and circumstances, as I have found them, are: Mr. Absalom has been engaged in the real estate and insurance business in Mount Holly for the past twenty-seven years. In September, 1946, a man named Herron visited the Absalom office to inquire about a business property advertised for sale. Spencer L. Haines, one of the Absalom salesmen, interviewed him. The property advertised was not adaptable to Mr. Herron's purpose, so Mr. Haines inquired of Mr. Absalom's secretary as to other business properties on their list. She replied that, at the moment, they had but few; she suggested adding others, including the property of the complainant here involved, and asked if she might not write the complainant; the letter was written September 16th, 1946. Upon receipt of that letter, complainant requested Mr. Absalom to call. He did, taking with him his son, another employee. After some discussion, the complainant signed a sales and agency contract.
Complainant's premises consist of a lot, approximately 35 feet by 161 feet, upon which stands half of an old double frame dwelling and an older brick stable or garage. The latter building is in a bad state of repair. A small office addition had at some time been added to the dwelling, and for a time was used by a physician. For several years, however, the property had been rented for dwelling purposes only, and the complainant had not visited it. Shortly before the execution of the agency agreement, complainant's husband had died, and just before his death he had offered to sell the property to the tenant for $8,000. The complainant's asking price was $12,000, to which she added the commission of $600. Mr. Absalom told the complainant he "would have a hard time to get that much money."
Mr. Absalom first visited the tenant and asked if he were interested in buying the premises. Advised of the asking price, the tenant revealed the offer of Mr. Remer and said that he would purchase the property at that price but would pay no more. Mr. Absalom offered the property to Mr. Herron; *Page 433 
he was not interested. Then Mr. Absalom had a "for sale" sign painted and placed upon complainant's building and began to run advertisements in the Mount Holly Herald designed to interest possible purchasers in the property. These advertisements appeared weekly for two months. During that period Mr. Absalom offered the property to James J. Hogan, a physician about to locate in Mount Holly, to Margaret Beck, who wished to acquire a property for a laundry, to Theodore Quay, the president of an athletic association in need of a club house, and to others. When advised of the asking price, all declared it too high and disclaimed any further interest.
Late in November, 1946, the defendant Melvin J. Fox called at the Absalom office. He and his father, Jacob Fox, and an associate, Edward Singer, owned and operated several moving picture theatres in Burlington County and often purchased real estate as an investment. Melvin J. Fox had called to inquire for investment properties. Mr. Absalom submitted 33 Washington Street at $12,600. Mr. Fox replied that the price was "entirely" too high. After he left the office, however, Mr. Fox inspected the property. He became interested and, a few days later, called again upon Mr. Absalom. After some conversation about the property, Mr. Fox said: "Well, I will buy that property if I can get the property next door at the same time but I won't give more than fourteen or fifteen thousand dollars for both of them and I won't give more than $8,500 for this property of Remer's."
Each half of the double home encroaches somewhat upon the other, the result of remodelling and dividing a structure designed and built as one large dwelling. The owner and occupant of the other half was the mother of an attorney, Stanley K. Heilbron. A year or two before, Mr. Heilbron had told Mr. Absalom that his mother would sell if a satisfactory offer was made. After talking with Mr. Fox, Mr. Absalom contacted Mr. Heilbron, and said that he had a buyer at $6,000 provided the Remer property could also be purchased at the customer's price. A week or ten days later *Page 434 
Mr. Heilbron reported that his mother would sell for $6,000 if she could remain in possession for some time.
Mr. Absalom then again visited complainant's tenant and told him of the $8,500 offer. The tenant was no longer interested in purchasing the premises. Mr. Absalom next telephoned Mr. Fox and secured his consent to meet Mrs. Heilbron's condition. Finally, Mr. Absalom telephoned the complainant and told her of the $8,500 offer for her property. He explained that he had advertised the property, had submitted it to various prospects, and that this was the best offer he had had. Complainant agreed to the sale and arranged to call at the Absalom office and execute a formal agreement.
Complainant did not call at Mr. Absalom's office until the following day, December 17th, 1946. She produced her deed. She said that she had fixed her selling price high in the hope she could get $10,000 but was glad to sell for $8,500. An agreement of sale was prepared, and complainant signed.
The next day Mr. Fox executed the agreement and made the down payment stipulated, $850. Mr. Absalom retained $425, his agreed commission, and immediately forwarded his check for $425 to the complainant. Settlement had been fixed for three months after the date of the agreement or, on or before March 20th, 1947. Mrs. Remer held the check for a month, then endorsed and deposited it in her account. Nothing further developed for almost two months. March 7th, 1947, an attorney wrote the defendant Fox, saying the complainant did "not intend to go through with the agreement as signed in December and is accordingly returning your deposit." A check for $850 was enclosed; four days later, it was returned and the attorney was advised that Mr. Fox had entered into the contract in good faith and desired to complete his purchase.
It was further established by the evidence that Mr. Absalom had never acted as the agent of the defendant Melvin J. Fox or of Equity Realty Company prior to the execution of the contract of sale, and did not so act in the transaction here challenged. After he had brought Mr. Fox and Mrs. Remer together and the agreement had been signed by them *Page 435 
his agency for the complainant was terminated. Houston v.Siebert (Court of Errors and Appeals), 129 N.J. Law 468,472; 30 Atl. Rep. 2d 35. Thereafter, he was free to serve Mr. Fox or the Equity Realty Company. Thereafter, Mr. Fox or the Equity Realty Company entrusted Mr. Absalom with the sale of the business properties, no longer needed for his or its purpose. Complainant argues that this latter happening casts "suspicion" on the conduct of Mr. Absalom in the earlier transaction. Suspicion is not proof. Fraud was not proven. Trust Company ofOrange v. Garfinkel (Court of Errors and Appeals), 107 N.J. Eq. 20; 151 Atl. Rep. 858.
The facts recited were found after careful observation of each witness, and upon the credible evidence, satisfactorily established. This resolution of the facts can lead to but one conclusion — that complainant's bill should be dismissed and specific performance of the contract advised.