21 N.J. Super. 106 (1952)
90 A.2d 891
JOSEPH L. SOLOFF, PLAINTIFF-RESPONDENT,
v.
DAVID JOSEPHSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 16, 1952.
Decided August 4, 1952.
*108 Before Judges McGEEHAN, JAYNE and GOLDMANN.
Mr. Morris Bloom argued the cause for the respondent.
Mr. Morgan E. Thomas argued the cause for the appellant (Messrs. Morgan E. Thomas and Robert Peacock, attorneys).
The opinion of the court was delivered by GOLDMANN, J.A.D.
Plaintiff, a real estate broker, sued defendant for $3,000 for services alleged to have been rendered in connection with defendant's purchase of the Brigantine Hotel, Brigantine, New Jersey. The jury found for plaintiff and judgment was entered in the sum of $3,000 and interest. Defendant appeals.
The Brigantine Hotel had been up for sale for two years or more, during which time it was listed with many brokers, among them the plaintiff, was advertised for sale, and had a "For Sale" sign on it. Toward the end of February 1950 defendant called at the office of plaintiff about a dwelling he had recently bought through that office, and in the course of the discussion mentioned the hotel. Plaintiff's agent, Spero, suggested that defendant go through the hotel property with him and a representative of the owner, Mrs. Sara S. Washington. This was done on March 6, 1950.
Defendant testified that at the time he stopped at plaintiff's office he was on his way to inspect the hotel; that he had known the property was on the market for some time before his conversation with Spero, and that he had visited the hotel several times prior to March 6, 1950. The testimony as to these prior visits was corroborated.
Spero claims he next heard from defendant about a week after the hotel inspection, when defendant visited plaintiff's office and said he was making arrangements to buy the hotel. Spero asked why defendant had not informed him of this so that they could settle the matter with Mrs. Washington, and defendant allegedly replied: "I will take care of all that, and I will take care of your commission."
*109 About a week later, on March 20, 1950, plaintiff's office sent a registered letter to Mrs. Washington confirming the verbal listing of the property at a sales price of $150,000, "upon which sales price you agree to pay a commission of 5%," and advising her that negotiations for the sale of the property to defendant were pending. A copy of the letter was sent to defendant. On March 22 an agreement of sale between Mrs. Washington and Cecilia Josephson, defendant's sister-in-law and designee, was consummated, the sales price being $125,000. There was an express provision that no commission was to be paid for the sale of the property. The agreement was subsequently assigned to the Brigantine Beach Hotel Corporation of which defendant was agent.
Settlement took place April 3, 1950. Spero was present at the closing and demanded that the seller pay the broker's commission. When her attorney informed him that the seller was not responsible for any commission, Spero claims he spoke to defendant who told him he "would take care of this. I don't want you to upset this deal." Defendant denies making any such statement and also denies Spero's uncorroborated testimony that he offered, prior to the execution of the sale agreement on March 22, 1950, to pay $500, and subsequently $1,000, in settlement of the claim for broker's commissions, both of which offers were allegedly rejected. Spero and plaintiff further testified that some time in June defendant agreed to settle the brokerage claims for $3,000. This defendant also denies.
Defendant argues six grounds for reversal. We need consider only one  error by the trial court in refusing to grant defendant's motion for dismissal at the close of the entire case.
It may be observed initially that a contract of employment, either express or implied, is necessary to entitle a broker to compensation for services rendered. 8 Am. Jur., Brokers, § 158, p. 1077; Ford v. Gibson, 191 Va. 96, 59 S.E.2d 867 (Sup. Ct. App. 1950). Basic requirements of an informal contract are a valuable consideration and a manifestation *110 of mutual assent by the parties thereto. 1 Williston on Contracts (Rev. Ed. 1936), § 18, p. 25; 1 Restatement, Contracts (1932), § 20, p. 25. Mutual assent usually takes the form of an offer, which must be communicated to the offeree, and an acceptance thereof by the latter, either by words or conduct. Oscar Schlegel Mfg. Co. v. Peter Cooper's Glue Factory, 231 N.Y. 459, 132 N.E. 148, 24 A.L.R. 1348 (Ct. App. 1921). There was no contract between plaintiff and defendant at the time plaintiff's agent, Spero, offered to take defendant through the Brigantine Hotel. The element of manifested mutual assent was completely lacking in defendant's original dealing with Spero.
Defendant was justified in believing that plaintiff was the seller's agent and that he would incur no obligation by allowing Spero to take him on a tour of inspection. Cf. Robinson v. Lincoln Trust Co., 95 N.J.L. 445, 449 (E. & A. 1921). At the time of the inspection arrangements, Spero did not inform defendant that he would be expected to pay a broker's commission, nor did defendant agree to pay such a commission.
The conclusion is inescapable that the plaintiff acted throughout as agent of the seller. That plaintiff recognized such to be the case is patent from the registered letter which his office sent the owner on March 20, 1950, confirming the verbal listing and stating that "you agree to pay a commission of 5%," as well as from the demand made upon the seller for the payment of commissions at the time of the settlement. It would have been impossible for plaintiff to become defendant's agent without fully disclosing to both the seller and defendant all of the material facts and obtaining their consent to the dual arrangement. 2 Restatement, Agency (1933), § 391, p. 882, Comment (d), and § 424, p. 969; 5 Williston on Contracts (Rev. Ed. 1937), § 1532, p. 4298; 8 Am. Jur., Brokers, § 87, p. 1036; Straus v. Spiegel, 153 F.2d 268 (C.C.A. 7 1946). See also Porter v. Woodruff, 36 N.J. Eq. 174, 179 (Ch. 1882); Young v. Hughes, 32 N.J. Eq. 372, 383 (E. & A. 1880).
*111 A real estate agent "is most strictly bound, within the scope of his employment, to the duty of absolute loyalty to his principal." Gordon v. Kaplan, 99 N.J. Eq. 390, 392 (E. & A. 1926), reversing 99 N.J. Eq. 195 (Ch. 1924). See 1 Mechem on Agency (2d ed. 1914), § 1188, p. 867. Plaintiff did not inform the seller that he was rendering services to the defendant for which he expected defendant to compensate him. This he should have done, for he could not at his convenience decide which of two adversely bargaining principals he was serving. A broker forfeits his commission for failure to make such disclosure. 5 Williston on Contracts (Rev. Ed. 1937), § 1477, p. 4131; 2 Restatement, Agency (1933), § 469, p. 1102; 8 Am. Jur., Brokers, § 164, p. 1082.
Plaintiff bases his right to recover on defendant's alleged promise in June 1950 to pay $3,000 in settlement of plaintiff's brokerage commission. Assuming that defendant made such a promise  and he denies that he did  it was not adequately supported by a valid consideration. Pascali v. Hempstead, 8 N.J. Super. 40 (App. Div. 1950).
Plaintiff contends that the defendant's agreement to pay $3,000 should be upheld on the ground that it represents a valid compromise of a disputed claim. It is true that a compromise of a doubtful or disputed claim may constitute adequate consideration for a promise. Altman v. Altman, 8 N.J. Super. 301, 308 (Ch. Div. 1950), Military College Co. v. Brooks, 107 N.J.L. 28 (Sup. Ct. 1929). The claim must, however, be asserted in good faith or the compromise will not stand. Worcester Loom Co. v. Heald, 78 N.J.L. 172, 175 (Sup. Ct. 1909). Such cannot be said to be the case where, as here, an agent asserts against his alleged principal (the buyer) a claim which arose while he was representing another (the seller) whose interests were adverse to those of the former, without having made a full disclosure to either. To allow such a compromise to stand would be to circumvent the rule requiring an agent to give absolute loyalty to his principal.
*112 The trial court should have granted defendant's motion for judgment of dismissal at the close of the entire case. Accordingly, the judgment below is reversed.