35 N.J. Super. 390 (1955)
114 A.2d 307
SAMUEL W. SILVERMAN, PLAINTIFF-RESPONDENT,
v.
CHRISTIANNA O. BRESNAHAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 9, 1955.
Decided May 20, 1955.
*392 Mr. Richard O. Venino argued the cause for the defendant-appellant.
No appearance for the plaintiff-respondent (Mr. Robert H. Doherty, Jr., attorney; Mr. Abraham Natovitz, of counsel).
The opinion of the court was delivered by FREUND, J.A.D.
The plaintiff, Samuel W. Silverman, is a licensed real estate broker who recovered a judgment of $1,000 against the defendant for commissions claimed to be earned for procuring a purchaser of certain premises known as the Saw Mill property. The defendant assigns as reversible error the trial court's charge to the jury over the defendant's objection that the duty of a broker to disclose to his principal that he represents other persons with adverse interests in the same transaction arises "only if the purchaser's promise to the plaintiff was made prior to the date on which defendant Bresnahan set the price" and "the defense will not avail unless she has shown that the buyer's promise preceded in time the date on which the price was fixed and the authorization given."
The defendant, Christianna O. Bresnahan, also owned a one-half interest in certain other real estate located in Ocean County, known as the Brick Yard property. On behalf of Mid-Stream Park Realty Co., Inc., from which he had *393 a general authorization to buy and sell land in Ocean County, the plaintiff offered the defendant $200 for her half-interest in the property, which comprised two parcels, one of 28 acres and the other of 32 acres. On August 1, 1952 he called upon the defendant at her home in New York and attempted to secure a quitclaim deed for her interest in the Brick Yard property. On the same occasion the plaintiff requested he be permitted to represent the defendant in the sale of the Saw Mill tract. On August 5, 1952 the plaintiff again called on the defendant, at which time he estimated her Saw Mill tract to be worth $10,000 and procured her signature to a written listing agreement for the sale of the tract for between $10,000 and $12,000, but not less than $10,000, and for the payment to him of a "10% commission at the time of the sale." After several telephone conversations and visits to the defendant, the plaintiff offered $10,600 for both tracts of land, together with any other land which the defendant had inherited from her father.
The defendant testified that a few days after signing the plaintiff's authorization she had sent him a telegram revoking it and that she had told him she would not take less than $12,000 for the property. She further testified that the plaintiff never presented to her a contract for the sale of the Saw Mill property, and that he never disclosed to her that he was acting on behalf of Mid-Stream Park Realty Co., Inc. in its purchase. This testimony was not denied by the plaintiff.
The complaint demands a commission of $1,000 predicated upon the defendant's written listing agreement of August 5, 1952 for procuring the Mid-Stream Park Realty Co., Inc., as the buyer of the Saw Mill tract. The defendant at the close of the plaintiff's case moved for a dismissal on the ground that the plaintiff "was dealing in a fiduciary capacity representing" both Mid-Stream Park Realty Co., Inc., and the defendant in the same capacity and at the same time, thus creating a breach of fiduciary duty to the defendant. The motion was denied.
*394 The plaintiff testified as follows:
"Q. * * * Will you tell us a little bit more about the Midstream Park Realty, how you first became associated with it? A. Midstream Park Realty was a lawyer in Jersey City by the name of Schwartz and Mr. Pearlstein. They said, `We would like to come down there and assemble some lands. We want to do some speculating, the Parkway, stuff like that.'
I said, `I can acquire a lot of land for you.' Stuff was sold three, four dollars an acre. I said, `When the Parkway comes it is going to be valuable.' I applied to assemble his lands. They had the corporation. And I agreed that anything I buy or get the commission  sell to them, and anything I buy for them that they should pay me a commission to sell for them and I will get a commission.
Q. When was that company organized, to the best of your knowledge? A. Oh, I don't remember; sometime in 1952, maybe a few months before I think I spoke to this woman, maybe around June or July.
Q. Was that company organized for the purpose of acquiring these various lands around Ocean County? A. I don't know what he got the company for. They were going to buy land, but anything in Ocean County they are going to buy through me.
Q. That was your agreement? A. That I would buy anything for them they would want, buy anything I want to buy for them and anything they sell in Ocean County would be sold through me as broker.
Q. You were their agent? A. To buy and sell for them."
The foregoing testimony and the defendant's written listing agreement of August 5, 1952 clearly establish the undisputed fact that the plaintiff attempted to assume two distinct and opposite characters in the same transaction  in one he acted for himself and Mid-Stream Park Realty Co., Inc. as vendee, and in the other for himself and the defendant as vendor, but without informing her of the dual representation.
The duty of undivided loyalty of the plaintiff as a broker on behalf of the defendant did not come to an end when the defendant authorized the plaintiff to find a purchaser at a designated price. Unless a principal has knowledge and consents to other representation, an agent for the sale or purchase of real estate can represent but one  to be employed by another in the same transaction prevents him *395 from obtaining the best terms for his original principal. Young v. Hughes, 32 N.J. Eq. 372 (E. & A. 1880); Porter v. Woodruff, 36 N.J. Eq. 174 (Ch. 1882); Gordon v. Kaplan, 99 N.J. Eq. 390 (E. & A. 1926); Carluccio v. 607 Hudson St. Holding Co., Inc., 141 N.J. Eq. 449 (E. & A. 1947); Soloff v. Josephson, 21 N.J. Super. 106 (App. Div. 1952); Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 62 A.L.R. 1 (Ct. App. 1928).
The plaintiff assumed a fiduciary relationship toward the defendant when he undertook to find a purchaser for her property. From that moment he had a duty of absolute fidelity and good faith to her and was bound to disclose to her all the facts within his knowledge which were material to the business for which he was employed. At that time he knew that he already had a potential purchaser for her property whom he represented and from whom he would receive a commission. This material fact he was under a bounden duty to disclose to the defendant, but he failed to do so. He remained silent even when he tendered her a contract of sale and a deposit from Mid-Stream Park Realty Co., Inc. Thereby, he breached his fiduciary relationship and forefeited his right to a commission. Young v. Hughes, supra.
It is implicit in the quoted portion of the court's charge that the plaintiff did not breach any duty of good faith owed to the defendant if there was no financial loss to her. The law is well settled that a real estate broker is in a fiduciary relationship toward the property owner whom he represents and owes him the duty of "good faith" and "absolute fidelity." The rule is:
"* * * based on considerations of public policy even if no injury should result to a principal by reason of his agent's concealment of facts. It was a statement of the general principles which govern the fidelity of agents toward their principals and that declaration has been reiterated in many cases in this state * * *." Devia Realty Corp. v. Joseph J. Garibaldi, &c., 140 N.J. Eq. 157 (Ch. 1947).
*396 The charge lays stress on the time the defendant set the selling price of her property. This is inconsequential if in fact at the time the plaintiff entered into his agreement to represent the defendant he also represented Mid-Stream Park Realty Co., Inc. and failed to disclose that fact to the defendant. In Ledirk Amusement Co., Inc. v. Schechner, 133 N.J. Eq. 602 (Ch. 1943), affirmed 135 N.J. Eq. 209 (E. & A. 1944), where the broker was not empowered to fix the price of sale, the court held:
"In some instances, there is no legal or practical impediment to one person acting as broker for both parties, but there must be the fullest disclosure to each principal that the broker is acting for both, in order that the principals may deal at arm's length. * * *"
Accordingly, we conclude that the portion of the trial court's charge objected to by the defendant was clearly erroneous.
We also find that the trial court should have granted the defendant's motion for dismissal of the complaint at the conclusion of the plaintiff's case for the reason that the proofs then disclosed the dual fiduciary relationship of the plaintiff to the respective parties.
On this appeal the plaintiff-respondent's attorneys filed a brief, but without notice to the court or to the defendant's attorney no one appeared on his behalf to argue the appeal. R.R. 1:8-2(a).
Judgment reversed and complaint dismissed.